El Pueblo de Puerto Rico, demandante y apelado, *v.* Santiago Colón Rodríguez, acusado y apelante.

Núm. 14303.—*Sometido:* Enero 9, 1950. *Resuelto:* Enero 18, 1950.

*Gaspar Gerena Bras,* abogado del apelante; *Hon. Procurador General Vicente Géigel Polanco, J. Rivera Barreras, Fiscal del Tribunal Supremo* y *Fernando Fornaris, Jr. Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Marrero emitió la opinión del tribunal.

El Fiscal formuló dos acusaciones contra Santiago Colón Rodríguez por infracción a la sección 2 de la Ley 417 de 14 de mayo de 1947 (pág. 827) según fué enmendada por la Ley 114 de 7 de mayo de 1948, pág. 273.[1] La médula de las acusaciones fué que Colón Rodríguez en los meses de junio, julio y agosto de 1948 se dedicó al negocio de agencia de empleos sin tener licencia ni autorización de clase alguna expedida por el Comisionado del Trabajo de Puerto Rico. El acusado fué convicto y sentenciado en ambos casos y de las sentencias condenatorias dictadas en su contra ha apelado. Alega ahora que el tribunal inferior cometió error al senten-

---

[1] La sección 2 de la Ley 417 de 1947, según fué enmendada en 1948, reza en lo pertinente así:

"Toda persona que deseare dedicarse al negocio de agencia de empleos, procederá a llenar una solicitud al efecto en formulario que suministrará el Departamento."

ciarlo sin que él hubiera hecho alegación de culpabilidad alguna, fundándose única y exclusivamente en las admisiones que él hizo en la vista sobre la transacción propuesta motu proprio por la corte, y al declarar que la acusación en una causa anterior en su contra era válida por aducir hechos constitutivos de una infracción a la referida Ley 417.

De la transcripción de evidencia se desprende claramente que al ser llamados para vista los casos en 14 de febrero de 1949 y antes de leerse las acusaciones al acusado y de hacer éste alegación de clase alguna, el letrado de la defensa solicitó permiso para que la corte oyera al acusado y que el juez entonces manifestó:

". . . Estos casos son por infracción a la Ley 417, o sea, por contratar unos pasajes (sic), a base de esos pasajes se defraudó a un grupo de obreros. La corte sugirió como es un caso que es *misdemeanor*, y se puede transigir a base de que él le pagara a los obreros, y le da tiempo para que él arregle con los obreros y reciba compensación adecuada."

Que el acusado ocupó la silla testifical y que luego de decir su nombre, manifestó que es veterano, que en la actualidad estudia y que recibe una compensación de $120([2]); y que preguntado por su abogado qué gestiones había hecho para transigir con los obreros los casos que estaban señalados para aquel día, manifestó:

"A tenor con lo dispuesto por el Hon. Juez le puse un telegrama a cada uno de los perjudicados y comparecieron al Hotel Central donde yo acostumbro hacer las reuniones. Entonces traté por todos los medios que ante otro abogado se transigiera, ante cualquier abogado, absteniéndose ellos en total por el hecho que ellos querían que fuera en corte cualquier decisión. Yo accedí porque no tenía oposición a que fuera en corte. Los cité a ellos para que vinieran hoy día 14."

Que al preguntársele luego cuál era la transacción que los obreros aceptaron y si él podría pagarla en los plazos que

[2] Del récord no se desprende si esta compensación era mensual, pero nos inclinamos a creerlo así.

el juez indicara, éste manifestó que la transacción había sido que la mitad del dinero se depositaría en corte dentro de tres meses, que la otra mitad quedaría a discreción del juez y que pagaría en los plazos que el juez indicara, pero pidiéndole a éste que se basara en sus ingresos de $120; que la corte entonces preguntó a cada uno de los obreros presentes en sala cuál era la cantidad que habían entregado al acusado; que sin que hubieran prestado juramento y sin ocupar la silla de los testigos, éstos indicaron las cantidades que habían entregado al acusado; que la corte inquirió de los obreros presentes si aceptaban que se les pagara la mitad de la deuda dentro de tres meses y el resto a plazos y que al contestar ellos afirmativamente el juez manifestó:

"Lo que yo voy a hacer es lo siguiente: *Posponer la vista del caso renunciando al término de prescripción.*" (Bastardillas nuestras.)

Que entonces el acusado dijo que renunciaba a dicho término y la corte continuó diciendo:

"Para el día, hoy estamos a 14, para el día 16 de mayo. Ahí tiene tres meses. El 16 de mayo usted comparecerá aquí con la mitad del dinero y ellos vienen y se cita a los demás para entregarle esa mitad y ese día se resuelve cuáles son los plazos para pagar el resto. *Los casos quedan pendientes para ese día y se señalan para ese día.* Ustedes vengan y cualquier otro perjudicado que ustedes conozcan le dicen que venga." (Bastardillas nuestras.)

Así termino la llamada vista del 14 de febrero de 1949.

Aparece igualmente de la transcripción de evidencia que el 28 de marzo del citado año fueron los casos llamados nuevamente para vista, compareciendo el acusado por el mismo abogado que le había representado en la vista anterior y que sin que tampoco se leyeran las acusaciones o se hiciera a nombre del acusado, quien se hallaba ausente, alegación alguna, la defensa se expresó en los siguientes términos:

". . . en la última vista comparecieron las partes y aceptaron una transacción que propuso el acusado. La corte señaló el caso para el mes de mayo, condicionado a que si el acusado, en el término

señalado de mayo, no había depositado en secretaría, la mitad del importe de los pasajes de las personas que comparecieron, la corte procedería a la celebración del juicio.''

Y que a esto replicó la corte:

''Eso va al récord y no es exactamente así. No es que se hizo una transacción. La corte sugirió que *ya que el acusado había aceptado los hechos, que era técnicamente culpable,* lo único que su señoría discutía era la reincidencia, la corte sugirió que si él podría pagar a los obreros perjudicados la cantidad de dinero que se alegaba había malversado, que entonces la corte podría considerar favorablemente una moción de archivo por ser un caso transigible. Pero nunca se cumplió con ese requisito. *La corte señaló el día de hoy para dictar sentencia. Lo único que hay para discutir es si la sentencia es por reincidencia.''* (Bastardillas nuestras.)

Aclaró entonces la defensa que en la vista anterior la corte había señalado los casos para el mes de mayo a fin de dar oportunidad al acusado de cumplir sus compromisos y que posteriormente y *ex parte* la corte había revocado ese señalamiento a virtud de una moción presentada por el fiscal, sin darle oportunidad al acusado. La corte replicó que hizo el señalamiento por haberse convencido de que el acusado no tenía intención de cumplir; que ésa fué una cuestión romántica de la corte; que el acusado no ha cumplido y la corte cree que no va a cumplir; y que la defensa debía convencerle de que no debía dictar sentencia contra el acusado por reincidencia. Entonces siguió diciendo el juez: ''Él aceptó los hechos de la acusación y aceptó que había sido convicto. Lo único que no aceptó es que esa sentencia fué dictada mediante denuncia que no aducía hechos. . . . La ley no necesita decir en cada artículo que la violación a ese artículo es penable'' y le declaró convicto de una violación a la Ley 417 y le impuso $500 de multa en cada caso. Solicitó la defensa la nulidad de la sentencia por no haber hecho el acusado alegación de culpabilidad y la corte se expresó así:

''*No la ha hecho,* pero la corte a virtud de los hechos lo declara culpable y convicto de los dos delitos.'' (Bastardillas nuestras.)

 Fué sin duda un error de parte de la corte el actuar en la forma en que lo hizo. Así lo admite el fiscal de este Tribunal y se allana a la revocación de las sentencias. Si la propia corte había hecho constar que se pospondrían los casos si el acusado renunciaba al término de prescripción; que los casos quedaban pendientes para el 16 de mayo de 1949; que se señalaban para ese día, y que el acusado no había hecho alegación alguna, no nos explicamos en verdad cómo ella procedió a dictar las sentencias que dictó.

Nuestra Carta Orgánica en los párrafos segundo y tercero de su artículo 2 provee que:

"En todos los procesos criminales el acusado gozará del derecho. . . de ser informado de la naturaleza y causa de la acusación; de obtener copia de la misma; de tener un juicio rápido y público; . . .

"Ninguna persona será considerada responsable de un delito sin el debido procedimiento de ley; . . ." 48 U.S.C.A., sec. 737, pág. 234.

Bajo los anteriores preceptos es imperativo leerle la acusación al acusado, aunque desde luego ése es un derecho que puede ser renunciado. Y aquí no aparece tal renuncia.

El derecho por parte de un acusado a hacer la alegación correspondiente,(3) bien de inocencia o de culpabilidad, así como a tener un juicio rápido y público, forman parte del debido procedimiento de ley. Como ya se ha visto, al llamarse los casos por primera vez para vista—sin que se leyeran las acusaciones y sin que el acusado hiciera alegación de clase alguna—se habló exclusivamente de la forma en que el acusado pagaría a los obreros las cantidades que de éstos había recibido, dándosele por la corte un término para pagar a cada uno de ellos la mitad de la deuda. Nada se dijo sobre

---

(3) El artículo 162 del Código de Enjuiciamiento Criminal provee:

"Hay cuatro clases de alegaciones contra una acusación, a saber:

"1. Confesión.

"2. Negación.

"3. Sentencia anterior condenatoria o absolutoria, por el mismo delito, que podrá alegarse con o sin la negación.

"4. Haber estado una vez expuesto por el mismo delito."

las acusaciones pendientes, ni respecto a si el acusado explotaba o no una agencia de empleo sin tener la debida licencia o autorización para ello. Antes de que expirara el período concedido para levantar los fondos necesarios—aparentemente a instancias del fiscal—la corte señaló de nuevo los casos y sin que tampoco en la nueva vista señalada se leyeran las acusaciones o se hicieran alegaciones por el acusado, la corte le declaró convicto y le sentenció en ambos casos. Esto no podía hacerse. Hubo, sin duda, un flagrante abuso del debido procedimiento de ley. Véanse Orfield, *Criminal Procedure from Arrest to Appeal,* 1947, pág. 291; 21 Harvard Law Review, pág. 217; 14 Am. Jur., sec. 257, pág. 943. Cf. *State* v. *Walton,* 91 Pac. 490.

El hecho de que el acusado estuviera dispuesto a transigir con los obreros, no tuvo el alcance que la corte inferior le dió. Colón Rodríguez fué acusado de dedicarse al negocio de agencia de empleos sin tener licencia expedídale por el Comisionado del Trabajo de Puerto Rico. Sobre ese particular específico ni una palabra se dijo durante las vistas celebradas en el tribunal inferior, de forma que aún si la transacción que él estuvo dispuesto a hacer con los obreros fuera admisible en evidencia, cosa que no está ante nos y que es innecesario resolver, resulta completamente claro que en lo que a las acusaciones concernía, las mismas nunca le fueron leídas ni él hizo alegación de clase alguna en cuanto a ellas. Habiéndose cometido este error, procede la revocación de la sentencia.

██ Aunque dada la conclusión a que hemos llegado se haría innecesario discutir el otro error señalado en relación con la cuestión de si la acusación anterior en la causa núm. M-2007 era válida o no y, por ende, si la misma puede servir de base a una alegación y convicción por reincidencia, para una mejor orientación nos parece conveniente decir que la sección 2 de la Ley 417 antes de ser enmendada en 1948 proveía que "toda persona que deseara dedicarse al negocio de agencia de empleos procederá a llenar una solicitud al efecto

en formulario que suministrará el Departamento" y que si bien en esa sección misma no se decía que su infracción constituiría delito alguno, sin embargo, en la sección 11 de la propia ley se proveía que "Toda persona que infrinja esta ley, o alguna sección o disposición de la misma, . . . . . será culpable de delito menos grave (*misdemeanor*) . . . .". Ello era suficiente para que la denuncia en dicho caso imputara un delito público y para que, al ser convicto y sentenciado el acusado, sirva tal sentencia de fundamento a una alegación de reincidencia. No es menester que una ley diga en cada una de sus secciones que su infracción constituirá delito público. Basta que tal cosa se haga constar en cualquiera de sus secciones. *Pueblo* v. *Avilés,* 54 D.P.R. 272, 279.

*Deben revocarse las sentencias apeladas y devolverse los casos al tribunal inferior para la lectura de las acusaciones y la celebración de los juicios correspondientes.*