EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MELITÓN MUÑIZ SANTOS y ETANISLAO LUGO, acusados y apelantes.

Número 15704.

*Sometido:* 3 de diciembre de 1954. *Resuelto:* 25 de enero de 1955.

*Práxedes Álvarez Leandri,* abogado de los apelantes; *Hon. Secretario de Justicia Interino J. B. Fernández Badillo y Rafael L. Ydrach Yordán, Fiscal, Tribunal Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Melitón Muñiz Santos, Etanislao Lugo y otras catorce personas fueron acusadas conjuntamente de seis delitos de ataque para cometer asesinato, consistentes en que allá en o por el día 30 de octubre de 1950, en Peñuelas, Puerto Rico, y en ocasión en que un grupo de agentes de la Policía Insular se dirigía al barrio Macaná de dicha población para cumplimentar una orden de allanamiento, los referidos acusados "actuando en concierto y de común acuerdo ilegal, voluntaria-

mente, con malicia, premeditación y deliberación y con el propósito firme y decidido de darle muerte ilegal . . . . mediante acecho y haciendo uso de bombas incendiarias, revólveres y pistolas, armas mortíferas, acometieron a los referidos policías insulares," hiriendo a seis de ellos. [1]

Fueron juzgados conjuntamente ante un jurado y éste rindió veredictos declarándolos a todos culpables de seis delitos de ataque para cometer homicidio. Contra las sentencias impuéstales, Melitón Muñiz Santos y Etanislao Lugo interpusieron el presente recurso de apelación.

Los apelantes alegan, en primer lugar, que el tribunal a quo cometió grave error al limitar a todos y cada uno de los acusados a solamente seis recusaciones perentorias cuando eran distintos acusados con intereses encontrados y representados por distintos abogados. No estamos conformes. El art. 209 del Código de Enjuiciamiento Criminal dispone que "Cuando varios acusados estén sometidos a juicio conjuntamente no podrán hacer recusaciones por separado, sino solidariamente." Tratándose en este caso de un delito no penable con reclusión perpetua, los acusados solamente tenían derecho a hacer solidariamente, seis recusaciones perentorias. Art. 223 del Código de Enjuiciamiento Criminal; *People* v. *McCalla, et al.*, 8 Cal. 301; anotación en 136 A.L.R. 450.

La enmienda hecha al art. 238 del Código de Enjuiciamiento Criminal [2] en nada ayuda a los apelantes. La

---

[1] Hipólito Ortiz, cabo; Ismael Lugo, teniente; José A. García, raso; Enrique Alvarado, Francisco Miranda, raso, e Ignacio Díaz.

[2] El indicado art. 238, según fué enmendado por la Ley núm. 1 de 10 de noviembre de 1950, dispone:

"Artículo 238.—Cuando dos o más reos hayan sido acusados conjuntamente de cualquier delito público deberán ser juzgados conjuntamente a menos que el Tribunal ordenare juicios por separado. Al ordenar juicios por separado el tribunal podrá discrecionalmente ordenar un juicio por separado para uno o más de los acusados, y un juicio conjunto para el resto de los acusados o podrá ordenar que cualquier número de los acusados sea juzgado en un solo juicio y cualquiera otro número de los demás acusados en juicios distintos o podrá ordenar un juicio por separado para cada uno de los acusados."

misma no tuvo otro alcance que el de eliminar el derecho que tenía todo reo acusado conjuntamente con otros de haber cometido un delito grave (*felony*), a exigir que fuera juzgado separadamente y en contrario disponer que tales reos—tanto en casos graves (*felonies*) como en casos menos graves (*misdemeanor*)—deberán ser juzgados conjuntamente a menos que el tribunal ordenare juicios por separado. En *People* v. *Dowell*, (1928) 204 Cal. 109, cert. denegado 278 U. S. 660, se interpretó una disposición idéntica al art. 238 de nuestro Código de Enjuiciamiento Criminal, según enmendado por la ya citada Ley núm. 1 de 10 de noviembre de 1950. Se resolvió en dicho caso que si la corte denegaba el juicio por separado, el hecho de que los acusados se vieran obligados a hacer sus recusaciones perentorias colectivamente en el juicio conjunto, no tenía el efecto de negarles la cuota de recusaciones que correspondía a cada uno, ni tampoco les privaba inconstitucionalmente de algún otro derecho. Para nosotros es claro que si la Legislatura hubiera tenido la intención de conceder al acusado el derecho a hacer recusaciones perentorias por separado cuando es sometido a juicio conjuntamente con otros acusados, así lo hubiera dispuesto enmendando el susodicho art. 209. No lo hizo. Por tanto, la ley es, y es también esa la voluntad legislativa, que cuando varios acusados estén sometidos a juicio conjuntamente no podrán hacer recusaciones por separado, sino solidariamente. El derecho a hacer recusaciones perentorias es un privilegio puramente legislativo pudiendo regularse por la Legislatura en la forma que ésta estime aconsejable. 50 C.J.S. 1070; *Estep* v. *State*, 245 S.W.2d 623; *People* v. *Lobel*, 82 N.E.2d 142; *Hayes* v. *State of Missouri*, 120 U.S. 68; *State* v. *Springer*, 239 P.2d 944. Nuestra Legislatura ha regulado el ejercicio de ese derecho en la forma que dejamos expuesta.

■ Los apelantes van un poco más lejos y alegan que como en la acusación se les imputaban seis delitos, ellos tenían derecho a seis recusaciones perentorias por cada delito. Tam-

poco tienen razón. El hecho de que la acusación contenga varios cargos no da derecho al acusado a usar recusaciones perentorias adicionales aun cuando los distintos cargos imputen delitos separados que puedan acumularse en una misma acusación. 50 C.J.S., sec. 281(4), p. 1077; 3 Wharton's *Criminal Procedure* (10th. ed.) sec. 1549; *State* v. *Compton*, 257 P.2d 915; *People* v. *Vorio*, 2 N.Y.S.2d. 611.

■ En el segundo señalamiento de error se ataca el veredicto por ser éste contrario a derecho. Los apelantes asumen la posición de que como uno de ellos, Etanislao Lugo, no estuvo presente en el sitio de los hechos y el otro, Melitón Muñiz llegó a dicho sitio después que los seis miembros de la policía mencionados en la acusación habían sido heridos, ellos no podían ser convictos de ataque para cometer homicidio. Arguyen que "el común acuerdo, la malicia, la premeditación y la deliberación son elementos que están en juego y siempre presentes en el asesinato" y no así en el homicidio que se comete sin malicia y en ocasión de un arrebato de cólera o súbita pendencia, y que la ausencia de los apelantes en el sitio de los hechos elimina la posibilidad del arrebato de cólera o la súbita pendencia. Concluyen que el veredicto contra Lugo debió ser de ataque para cometer asesinato o absuelto y que contra Muñiz sólo cabía un veredicto de acometimiento grave o de absolución.

La falla de este argumento está en que los apelantes no fueron acusados de ataque para cometer homicidio y sí de ataque para cometer asesinato. Si el Pueblo presentó suficiente prueba para justificar un veredicto de culpabilidad del delito imputado en la acusación y asumiendo que el juez erróneamente dió instrucciones al jurado sobre el delito menor de ataque para cometer homicidio y que como consecuencia de ello el jurado rindiera veredicto por el delito menor, no constituye un error perjudicial que conlleve la nulidad del veredicto y la revocación de la sentencia apelada. *Pueblo* v. *Blanco*, ante pág. 767.

■■ Esto nos lleva a considerar los errores tercero y cuarto que se relacionan con la suficiencia de la prueba. Esta, en términos generales, y según la resume el fiscal de esta Corte, es como sigue:

"La prueba de cargo desfilada en juicio tendió a demostrar que habiendo el juez de paz de Peñuelas expedido una orden de allanamiento para registrar la casa residencia de doña Tomasa Viuda de Muñiz en el barrio Macaná de dicho pueblo, (T.E. 163), a fin de deligenciarla, varios agentes de la Policía Insular se encaminaron a eso de las 4:00 y 4:30 de la madrugada del 30 de octubre de 1950, hacia dicho barrio; (T.E. 163, 192, 218, 235, 252, 267, 308, 309); que al llegar a un paraje conocido por 'El Culto' los agentes abandonaron sus vehículos y cuando comenzaron a bajar a pie, 'de uno en fondo', por una pequeña vereda que conduce a la casa que iba a ser allanada, los acusados (excepto los dos aquí apelantes, que no estaban presentes) que estaban apostados a mano izquierda de la vereda, protegidos por la obscuridad de la noche y un sembrado de caña de azúcar, la emprendieron a tiros contra los agentes. (T.E. 179, 195, 218, 219, 235, 236, 252, 253, 267, 268, 269, 309, 310, 311.) Como resultado de esos disparos resultaron heridos los siguientes agentes de la Policía Insular: Hipólito Ortiz, Ismael Lugo, José A. García, Enrique Alvarado, Ignacio Ortiz (sic) y Francisco Miranda.

"En lo que respecta a los aquí apelantes, la prueba de cargo tendió a demostrar que aunque éstos no se encontraron en el sitio de los hechos ni participaron en la consumación física de los delitos imputados, fueron los autores intelectuales de los mismos."

En cuanto al apelante Melitón Muñiz, la prueba de cargo revela además, lo siguiente: Melitón llegó a casa de su madre, que queda como a hora y media a pie del sitio donde la policía fué tiroteada, el día 29 de octubre de 1950, como a las diez de la noche; iba acompañado de otras personas y portaban tres paquetes; todos durmieron esa noche en la casa de la madre de Melitón. Como a las cuatro de la mañana del día 30 de octubre Melitón fué visto por la policía en compañía de González Ubiles y otra persona sentado en un muro que queda como a 25 pies del sitio del tiroteo. Cuando el nacionalista Mariano Rodríguez llegó al barrio "El Culto" en la madrugada del día 30 de octubre, encontró a Melitón

en la carretera con un revólver en la mano y éste le ordenó echar dentro de un automóvil varios paquetes, rifles o carabinas y sables. Luego ordenó a los nacionalistas que estuvieran armados, que fueran con él en dicho auto y así lo hicieron. Después de haber comenzado el tiroteo y cuando la policía todavía estaba contestando los disparos esporádicos que le hacían los nacionalistas, Melitón llegó al sitio en automóvil y la emprendió a tiros de revólver contra el "jeep" donde estaban parapetados varios policías. Estos contestaron el fuego y le ordenaron rendirse. Así lo hizo Melitón arrojando el revólver a la carretera. Al ser arrestado en aquel sitio se le ocuparon sobre su persona dos cajas de balas calibre 38, largas, que contenían un total de 81 balas; también se ocupó el revólver que él había utilizado para disparar. En aquel mismo sitio Melitón le admitió al teniente de la policía Angel Ortiz, que ese movimiento era general en toda la isla y que no se circunscribía a Peñuelas.

La prueba en conjunto es suficiente para sostener el cargo imputado al apelante en la acusación. Todas las circunstancias establecidas tienden a indicar que el ataque a la policía formaba parte de un plan y que Melitón era uno de los dirigentes de ese plan. Su participación en el mismo quedó plenamente confirmado cuando al llegar al sitio de los hechos se unió a sus compañeros en el ataque contra la policía. Es claro pues, que Melitón actuó en concierto y de común acuerdo en el indicado ataque y él es por tanto tan responsable como sus compañeros. Véase *Pueblo* v. *Jaca, et. al.*, ante pág. 464.

▪ Ahora bien, en cuanto al otro apelante, la prueba establece únicamente las siguientes circunstancias: Lugo es nacionalista y vive en la calle Jobos de Ponce. El día 28 de octubre de 1950 González Ubiles fué donde Román Cortés Hernández y dijo a éste que le prestara su automóvil a Lugo. Cortés llevó su vehículo y lo estacionó más abajo de la residencia de Lugo y lo dejó allí pero no vió a Lugo ni habló con él. En ocasiones anteriores Cortés había prestado su

automóvil a Lugo para que éste paseara en él a su familia. El día 29 de octubre por la noche Mariano Rodríguez Virola fué invitado a pasear por Arturo Ortiz. Ambos llegaron a la casa del apelante Lugo quien se encontraba acostado en su habitación; Ortiz salió de dicha casa y le indicó a su compañero que le esperara allí. En la sala de la casa del apelante Lugo se encontraban su esposa y sus hijos. Más tarde llegó allí otro individuo llamado Juan Alicea Torres. Esta persona fué testigo en el proceso y declaró que Lugo le había mandado a buscar y le dijo que esperara a Pedrosa para que fuera a un "pasadía". A eso de las 11:30 de la noche llegó también a la casa del apelante Pedrosa. Este le preguntó a Lugo, quien permanecía acostado en su habitación, si él sabía de alguien que conociera el camino hacia "Macaná". Lugo contestó que no pero al mismo tiempo le preguntó a Rodríguez Virola si él conocía ese camino, contestando Rodríguez en la afirmativa. Entonces todos los visitantes se retiraron de la casa de Lugo, abordaron el automóvil que Román Cortés había dejado estacionado el día anterior en aquellos alrededores y se dirigieron a la casa de una hermana de Melitón Muñiz, sita en el barrio Macaná de Peñuelas. Lugo permaneció en su hogar. (³) Un testigo, Jesús Gutiérrez declaró que Lugo era el Presidente del Partido Nacionalista en Ponce; que en una reunión celebrada en la casa de Melitón Muñiz, tres semanas antes de los sucesos Lugo hizo uso de la palabra y dijo que "cuando uno fuera a una reunión, llevara aunque fuera un canto de palo", agregando que el señor Albizu Campos había tenido muchos gastos en tribunas y mítines y que ese dinero había que recogerlo para entregarlo.

Esta es toda la evidencia presentada por el Pueblo para probar que el apelante Lugo actuó en concierto y de común

---

(³) A pesar de que el teniente José R. Rodríguez declaró que Lugo le había dicho en el cuartel de la policía de Villalba que él había tomado participación en el tiroteo de Peñuelas, tanto el fiscal de la corte a quo como el de esta Corte admiten que Lugo no participó en dicho tiroteo porque cuando el mismo ocurrió se encontraba en su residencia en Ponce.

acuerdo con los demás coacusados en el tiroteo del barrio Macaná de Peñuelas. La prueba es insuficiente. Presumiendo que el testimonio de Juan Alicea Torres, quien declaró que Lugo le mandó a buscar para que fuera con Pedrosa a un pasadía y el de Mariano Rodríguez Virola, quien relató la conversación de Pedrosa con Lugo acerca del camino de Macaná, conectaran en algo al acusado con el delito que se le imputa, aun así la prueba siempre sería insuficiente porque ambos testigos son cómplices y sus testimonios a ese respecto no han sido corroborados. *Pueblo* v. *Portalatín*, 63 D.P.R. 641. La prueba no conecta a Lugo con algún plan encaminado a realizar el ataque en que salieron heridos los seis policías. A falta de esta u otra prueba que establezca fuera de duda razonable que Lugo actuó en concierto y de común acuerdo con los atacantes de la policía, no puede prevalecer un veredicto condenándole por los hechos imputados en la acusación. Véase Fricke, *Cal. Criminal Law*, págs. 70 y 71.

*Por los motivos expuestos, la sentencia en cuanto a Etanislao Lugo será revocada y se dictará en su lugar otra absolviéndole. La sentencia en cuanto a Melitón Muñiz Santos será confirmada.*