EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* GERARDO CRUZ JIMÉNEZ, ZENÉN HIRALDO JIMÉNEZ y EULOGIO ORTIZ VERDEJO, acusados y apelantes.

*Número:* CR-62–206 *Resuelto:* 25 de enero ·de 1963

*Víctor Velasco Gordils,* abogado Sociedad para Asistencia Legal, abogado de los apelantes; *J. B. Fernández Badillo, Procurador General,* y *Peter Ortiz, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

El récord de este caso presenta un episodio fuerte. Tres personas adultas dieron muerte a un anciano a fuerza de golpes que le infligieron con una tranca, con los puños y con los pies en el propio cuartucho donde vivía de unos 11 pies de ancho por 12 de largo en una de las antiguas cuadras del hipódromo Las Casas. La autopsia reveló múltiples contusiones y laceraciones en la cabeza, en el abdomen y en el tórax. Le rompieron el bazo y le laceraron el mesenterio y otros órganos interiores, lo cual causó una profusa hemorragia de unos dos litros de sangre desparramada en la cavidad abdominal; le rompieron cuatro costillas y le causaron otras lesiones en el tórax. Recibió una contusión en la región del ápice producida con tanta violencia que invadió la masa y el músculo que circunda el corazón. Estas lesiones, dijo el mé-

dico, tuvieron que haber sido producidas con mucha violencia, probablemente con algún leño de bastante peso y manejado con bastante contundencia, algún tronco de madera o a puntapiés, a patadas. En la cabeza la víctima presentaba una contusión de dos pulgadas por una en la región frontal izquierda del cuero cabelludo. La muerte se debió a la rotura del bazo que produjo la hemorragia masiva.

Motivos para esta muerte así de esa manera ensañada que estas tres personas a la vez realizaron apenas si los hay en el récord. No hubo siquiera el motivo del robo. Aparentemente uno muy trivial: el anciano se había quejado a su hijo de que estas personas lo molestaban y hubo un ligero encuentro a los puños entre el hijo y uno de los agresores. Un jurado que los juzgó los declaró convictos de asesinato en primer grado. Uno de ellos el apelante Eulogio Ortiz Verdejo radicó una moción de nuevo juicio que fué discutida y declarada sin lugar.

En apelación todos ellos presentan el siguiente señalamiento de errores: (1) que se cometió error al admitirse en evidencia las confesiones tomadas por el Fiscal a dos de los acusados, Gerardo Cruz Jiménez y Zenén Hiraldo Jiménez; (2) que cometió error la Sala sentenciadora al negar juicio por separado a todos y cada uno de los acusados; (3) que se cometió error al declararse sin lugar la moción de nuevo juicio del apelante Ortiz Verdejo; (4) que el Tribunal cometió error al permitir que el jurado llevara al cuarto de deliberación los escritos conteniendo las confesiones de dos de los acusados; (5) que hubo error al admitirse en evidencia una admisión por adopción del apelante Ortiz Verdejo en que se comentó el silencio del acusado; (6) que el Tribunal cometió error al negarse a admitir en evidencia prueba del acusado Ortiz Verdejo para impugnar las confesiones de los otros dos acusados. Finalmente, (7) que el veredicto fué contrario a la prueba y a derecho.

El primer error no fue cometido. Durante la investigación dos de los acusados confesaron por escrito haber cometido el delito. El Ministerio Fiscal fué muy pulcro en establecer primeramente todos los elementos y circunstancias demostrativos de la voluntariedad de estas confesiones, así como la ausencia de toda clase de coacción física o moral. Ocurrió que las confesiones, aunque dadas en un Cuartel de la Policía durante la investigación, lo fué en presencia del Fiscal y además de un Magistrado del Tribunal de Distrito quien fué llamado al Cuartel. Aparte de lo dicho, la representación legal de los acusados que confesaron hizo constar para el récord, libre de toda ambigüedad, que las confesiones fueron dadas sin que hubiera mediado clase alguna de coacción. (1)

Sostienen los apelantes, sin embargo, que es error en Puerto Rico admitir toda confesión hecha extrajudicialmente. Invocan para ello lo dispuesto en el Art. 2 del Código de Enjuiciamiento Criminal en el sentido de que a nadie se le castigará por delito a no ser en virtud de convicción legal

---

(1) "FISCAL, (Ortiz Juan): Señor juez, el representante del acusado Gerardo Cruz Jiménez y el representante del acusado Zenén Hiraldo Jiménez ofrecen la estipulación en el sentido de que estas declaraciones fueron prestadas libre y voluntariamente, sin que mediara coacción, promesa o estímulo de clase alguna que pudiera entenderse violaban el derecho a no incriminarse.

JUEZ: ¿El compañero Luciano y el compañero Mendía convienen en esa estipulación?

LCDO. LUCIANO: Sí, señor.

LCDO. MENDÍA: Sí, señor juez.

JUEZ: ¿Ambos, en representación de sus respectivos defendidos convienen con el fiscal en que esas declaraciones de sus defendidos fueron tomadas libre y espontáneamente, sin que mediara factor alguno de coacción o promesa que viciara esas declaraciones?

LCDO. LUCIANO: Sí, señor juez.

LCDO. MENDÍA: Nosotros, señor juez, después de entrevistar a nuestro representado, llegamos a la conclusión de que su declaración fue prestada libre y voluntariamente."

"JUEZ: Se aprueba la estipulación.

¿Convienen los acusados que representan los compañeros Luciano y Mendía que esas declaraciones juradas ofrecidas por el fiscal en evidencia fueron prestadas por sus respectivos representados libre y voluntariamente,

habida en tribunal competente, y que la *convicción* podrá ser (1) por veredicto de jurado; (2) por confesión del acusado en *sala de justicia;* (3) por sentencia del tribunal autorizado, en determinadas causas, sin que medie confesión o veredicto del jurado; e invocan también lo dispuesto en el Art. 11 que prohibe al Ministerio Fiscal el interrogar a los testigos del acusado, excepto en el acto de celebrarse el juicio público. Entienden que el Art. 2 impide toda confesión *fuera* de la sala de justicia.

 El inciso 2 del Art. 2 antes citado no tiene el alcance que le dan los apelantes. Establece uno de los medios en que puede declararse convicta a una persona de la comisión de delito, sin necesidad de que se presente prueba en su contra para determinar su culpabilidad. Equivale a la convicción misma y lleva la renuncia al jurado cuando hubiere tal derecho. Da base para dictar la sentencia imponiendo el castigo. Véase a ese respecto los Arts. 28, 162, 164, 309 y 310 del propio Código de Enjuiciamiento Criminal, ed. 1935. Cfr: *Commonwealth* v. *Lockwood,* 109 Mass. 323; *Ex Parte Brown,* 68 Cal. 176; *People* v. *Banks,* 348 P.2d 102; *People* v. *Lennox,* 67 Cal. 113; *People* v. *Duke,* 330 P.2d 239; *People* v. *Williams,* 27 C.2d 220, 163 P.2d 692. De ahí que la jurisprudencia haya establecido las garantías necesarias al efecto de que dicha confesión en sala de justicia que releva al Ministerio Público de probar la comisión de un delito sea hecha a plena conciencia por parte del acusado de

---

sin factor alguno que las vicie de nulidad, así como que los nombres que aparecen firmados, Zenén Hiraldo Jiménez y Gerardo Cruz Jiménez, fueron escritos por los respectivos acusados en sus declaraciones, y asimismo la firma del fiscal don Félix Ortiz Juan, puesta por él en aquel acto?

LCDO. MENDÍA: Sí, Vuestro Honor.

LCDO. LUCIANO: Sí, señor juez.

FISCAL (Ortiz Juan): Y que las declaraciones fueron firmadas por los acusados después de ellos haberlas leído.

JUEZ: ¿Es así?

LCDO. LUCIANO: Sí, señor juez.

LCDO. MENDÍA: Sí, señor.

JUEZ: Que pase el jurado . . ."

las consecuencias que lleva consigo.(²) De acuerdo con el estado de nuestro derecho, el Art. 2 no tiene el efecto legal de impedir el que se presente y admita en el curso de un proceso criminal, como una pieza de evidencia de cargo a ser evaluada con el resto de la prueba, la confesión extrajudicial de un acusado, sujeto, desde luego, a aquellas garantías, parte misma del debido procedimiento de ley y de un juicio imparcial y justo, de que tal confesión extrajudicial haya sido voluntaria y libre de toda coacción. Tampoco es impedimento lo estatuído en el Art. 11, en cuanto a que el Fiscal no deberá interrogar a los testigos del acusado, excepto en el acto de celebrarse el juicio público, para la admisión de estas confesiones voluntarias y libres. En *Pueblo v. Tribunal Superior, Félix Ramos Cruz, Int.*, 80 D.P.R. 702, pág. 704, aunque a otros efectos, dijimos que la disposición final del Art. 11 no se refería al acusado. Es clara la improcedencia del precepto aludido. A los apelantes se les interrogó fuera de corte como sospechosos o presuntos autores del crimen por confidencias que tenía la policía. Luego vinieron a ser los acusados mismos, no testigos de un acusado.

El otro motivo que aducen los apelantes para impugnar la admisión de las confesiones es que en la etapa de la investigación en que dichas confesiones fueron ofrecidas los acusados carecían de asistencia legal. Pasaremos por alto el hecho que el récord no demuestra que ellos pidieran en ese entonces el que se les permitiera consultar con abogado. Como cuestión de política pública en la administración de la justicia criminal, aquí y en muchas otras jurisdicciones la

---

(²) Cfr: *Jiménez v. Jones*, 74 D.P.R. 260; *Batalla v. Tribunal*, 74 D.P.R. 289, 319; *Pueblo v. Colón*, 70 D.P.R. 792; *Nieves v. Jones*, 72 D.P.R. 287; *Berg v. United States*, (C.A. 9) 176 F.2d 122, *certiorari denegado*, 338 U.S. 876; *Waley v. Johnston*, 316 U.S. 101; *Ex parte Martínez*, 52 C.2d 808, 345 P.2d 449; *People v. Mattson*, 51 C.2d 777, 336 P.2d 937; *People v. Davis*, 48 C.2d 241, 309 P.2d 1; *People v. Ballentine*, 39 C.2d 193, 246 P.2d 35; *Ex parte James*, 38 C.2d 302, 240 P.2d 596; *People v. Gilbert*, 25 C.2d 422, 154 P.2d 657; *People v. Griggs*, 17 C.2d 621, 110 P.2d 1031; *People v. Manríquez*, 188 C.2d 602, 206 P.63; *Application of Breen*, 162 C.A.2d 235, 328 P.2d 465.

federal inclusive, el planteamiento señala sin lugar a dudas un inquietante problema que ha sido y continúa siendo presionado ante los tribunales y que representa ser de no poca preocupación entre aquéllos que en mayor o menor empeño velan por las garantías de los que vienen ante la justicia por sus actos antisociales. Este problema es el derecho a tener asistencia legal en etapas previas al proceso judicial en que dicha asistencia está constitucionalmente garantizada, (3) sobre todo si durante las mismas se obtiene una confesión que luego se utiliza en el proceso. Si, según observamos en *Pueblo* v. *Tribunal Superior*, antes citado, [pág. 705], "(L)a declaración dada por un acusado durante la investigación fiscal— etapa del proceso en que no puede tener la asistencia de un defensor— puede constituir el único instrumento para obtener su convicción", como cuestión de política pública el problema es importante y quizás requiera en definitiva un reexamen bajo criterios que entiendan que alguna garantía de asistencia legal en etapas previas al enjuiciamiento en corte responde a mejores normas en la administración de la justicia penal de un pueblo. (4) Sin embargo, como problema inmediato según lo tenemos aquí ahora de alegada infracción de una garantía constitucional; o como impedimento legal para la admisión en el proceso de las confesiones, por otra parte libres y voluntarias, de dos de los acusados; o como infracción del debido procedimiento de ley, nuestro estado de derecho ya claramente definido es contrario a la contención de los apelantes en ese sentido. No es necesario extendernos una vez más en un análisis detenido de la norma de derecho aplicable, ya que no ha mucho hicimos una extensa revisión de todo el problema a la luz de nuestra Constitución

---

(3) Constitución del Estado Libre Asociado, Art. II, Sec. 11; Cfr: Constitución de los Estados Unidos, Enmienda VI.

(4) En las Reglas de Procedimiento Criminal que este Tribunal ha venido adoptando y remitiendo a la Asamblea Legislativa en cumplimiento del mandato constitucional—Constitución, Art. V, Sec. 6—se ha provisto para la consulta y asistencia de abogado en etapas previas al proceso en corte. Reglas 4, 22 (b), 22 (c), 23 (a).

y de la anterior Carta Orgánica de 1917, de las Enmiendas V
y XIV de la Constitución Nacional y de aquellos principios
bajo la Enmienda VI aplicables a acusados federales, en *Ri-
vera Escuté* v. *Delgado*, 80 D.P.R. 830 que fue confirmado
por la Corte de Apelaciones del Primer Circuito en 282 F.2d
335, y el Tribunal Supremo denegó su revisión por *certiorari*,
365 U.S. 883. En esa decisión analizamos los casos de
*Crooker* v. *California*, 357 U.S. 43 y *Cicenia* v. *Lagay*, 357
U.S. 504, y a tenor de dichos casos y de nuestras propias de-
cisiones anteriores, dejamos sentado que una confesión no es
involuntaria o coaccionada e inadmisible por el solo hecho de
que se preste durante una investigación policíaca en ausen-
cia de asistencia legal, y que la garantía constitucional en
tal sentido no cubre una etapa anterior al acto en corte de
la lectura de la acusación. Dijimos, siguiendo criterios del
caso de *Crooker*, que tanto a tenor de nuestras propias dispo-
siciones constitucionales como a tenor de las Enmiendas V y
XIV, el derecho a asistencia de abogado no está ineludible-
mente restringido al proceso en corte, pero que no existe el
derecho absoluto bajo el debido procedimiento a disfrutar de
representación o asistencia legal en la etapa investigadora
del delito, a menos que considerada la ausencia de dicha asis-
tencia en conjunto con las demás circunstancias y factores
presentes, la sentencia condenatoria sea el fruto de toda una
situación repulsiva a aquellos principios básicos de libertad
y justicia que inspiran un juicio imparcial y justo. También,
que en ausencia de planteamiento de involuntariedad no cabía
concluir que la confesión sin asistencia de abogado crease
una situación de fundamental injusticia que viciara el juicio
posterior bajo el debido procedimiento. Ya hemos visto por
el récord de este caso que aquí no existen esas circunstancias
de fundamental injusticia, ya que las confesiones se dieron
voluntariamente y libre de todo tipo de coacción. Los casos
de *Spano* v. *New York*, 360 U.S. 315 y *Hamilton* v. *Alabama*,
368 U.S. 52, resueltos con posterioridad al de *Rivera Escuté*,

no desvirtúan esa decisión. *Spano* rechazó bajo la Enmienda XIV la admisión en evidencia de una confesión coaccionada e involuntaria. *Hamilton* decidió que en las circunstancias de ese caso Alabama había violado el debido procedimiento de la Enmienda XIV al negarle al acusado asistencia legal en el acto de la lectura de la acusación. Este Tribunal ha mucho tiempo le tiene garantizado a los acusados el derecho a asistencia legal en ese acto. California, a donde por la procedencia de nuestro enjuiciamiento criminal siempre acudimos, no obstante el hecho de que constitucional y estatutariamente garantiza de manera efectiva adecuada asistencia legal en etapas previas al proceso criminal, mantiene iguales principios. (⁵)

■ Pasamos al cuarto señalamiento que imputa error al disponerse que el jurado llevara a la deliberación las confesiones escritas de los dos acusados que confesaron. Efectivamente la Sala sentenciadora se manifestó así: "Llevarán ustedes, señoras y señores del jurado, al salón de deliberaciones, la acusación radicada en este caso, así como las piezas de evidencia ofrecidas y admitidas, todas de El Pueblo, del

---

(⁵) Constitución de California, Art. 1, secs. 8, 13; Código Penal, secs. 858, 859, 859 (a), 860, 866.5. Cfr: *People* v. *Strobel*, 36 C.2d 615, 226 P.2d 330, confirmado, 343 U.S. 181; *People* v. *Dosier*, 180 C.A.2d 436; *People* v. *Grace*, 166 C.A.2d 68, 332 P.2d 811, *certiorari denegado*, 360 U.S. 940; *People* v. *Coker*, 104 C.A.2d 224, 231 P.2d 81, *certiorari denegado*, 342 U.S. 894; *People* v. *Boyden*, 116 C.A.2d 278, 253 P.2d 773; *Lisenba* v. *California*, 314 U.S. 219; *People* v. *Linden*, 185 C.A.2d 752; *People* v. *Teitelbaum*, 163 C.A.2d 184, 329 P.2d 157; *certiorari denegado*, 359 U.S. 206; *People* v. *Pendarvis*, 189 C.A.2d 180. *Betts* v. *Brady*, 316 U.S. 455, está pendiente de reexamen en *certiorari* expedido en *Gideon* v. *Cochran*, 370 U.S. 908, pero independientemente del resultado, no creemos se afecte la situación discutida ya que *Betts* envuelve la negativa a asistencia legal durante el proceso.

Por otra parte, el Art. 32 del Código de Enjuiciamiento Criminal dispone que cuando se haga un arresto sin mediar el correspondiente mandamiento, la persona arrestada se conducirá sin demora innecesaria a presencia del Juez de Paz [los hechos de este caso son posteriores a la Constitución, —Cfr: *Pueblo* v. *Fournier*, 77 D.P.R. 222] con lo cual de no hacerse podría surgir una situación de arresto ilegal, pero el récord aquí demuestra que un Magistrado de Distrito se personó de inmediato en el Cuartel de la Policía donde interrogaban a los acusados al confesar.

1 al 11, a saber: . . . . el 10, declaración de Gerardo Cruz Jiménez prestada ante el fiscal; y el 11, declaración de Zenén Hiraldo Jiménez, también prestada ante el fiscal."

El Art. 274 del Código de Enjuiciamiento Criminal dispone que el jurado podrá llevar consigo al retirarse para deliberar, todos los documentos o escritos *exceptuando las deposiciones*, que hayan sido recibidas como prueba en el proceso. Recientemente, en *Pueblo* v. *Ramos Cruz*, 84 D.P.R. 563 (1962) consideramos idéntica cuestión y sostuvimos que se había cometido error en permitir que la confesión escrita del acusado fuera al jurado. Exponiendo en ese caso las razones de la excepción del Art. 274 dijimos que es injusto para el acusado que el jurado tenga ante sí un documento escrito que puede leer y releer en el cual él admite la comisión del delito que se le imputa, mientras que de la prueba desfilada en el juicio en su defensa, el jurado sólo tiene el recuerdo de lo que declararon los testigos. No obstante reconocerse el error, en el caso de *Ramos Cruz* no revocamos, considerando que en las circunstancias de dicho caso el error no fué perjudicial. Pero advertimos que de ordinario el permitir que la confesión escrita vaya al jurado en violación del Art. 274 lleva consigo la revocación de la sentencia y la concesión de un nuevo juicio y que así aplicaríamos la regla en lo sucesivo.

En justicia a la Sala sentenciadora hay que decir que el error se cometió con anterioridad a la decisión de *Ramos Cruz,* en donde sostuvimos específicamente que una confesión es una deposición. Ni *Pueblo* v. *Reyes,* 6 D.P.R. 196, ni *Pueblo* v. *Jiménez,* 78 D.P.R. 7, se pronunciaron expresamente sobre el particular. Y como en el caso de *Ramos,* concluimos que en las circunstancias de éste, el error tampoco fué perjudicial al extremo de que requiera la revocación de la sentencia por este fundamento. Los dos acusados que confesaron no presentaron prueba de *defensa,* y la prueba de cargo sobre los hechos fué sumamente sencilla y corta, sin que tuviera

problemas de conflicto en sí misma. Debe entenderse, repetimos, después de la decisión de *Ramos Cruz*, que los jueces de instancia no deben cometer el error bajo el criterio de que el mismo pudiera no resultar perjudicial al acusado. La prohibición del Art. 274 es clara y la misma debe ser cumplida por las Salas sentenciadoras.

Para sostener el quinto error señalado se invoca la decisión de este Tribunal en *Pueblo* v. *Alvarez Trinidad*, 85 D.P.R. 593 (1962). Mientras declaraba el Teniente de la Policía Alejandro Bigio en torno a lo ocurrido durante la investigación, él se manifestó así: "P.—¿Cuando Eulogio, a quien usted mandó buscar con Gerardo, y Zenén, le dicen que estaba complicado en el asunto también Yoyó, habló usted entonces con Yoyó, con Eulogio? R.—Hablé con Eulogio, tuve un cambio de impresiones con él, y me negó los hechos. Entonces, como los hermanos Gerardo y Zenén lo acusaban directamente de que él había sido el que había dado con palos y patadas, hicimos una especie de careo, y Gerardo, que era el que más hablaba de los tres, le decía: 'Pero si los tres estuvimos juntos, di la verdad.' Y Zenén también le decía que dijera la verdad. Entonces él bajaba la cabeza y ni decía que sí ni decía que no. Permanecía callado. P.—¿No hubo discusión entre ellos? R.—A él le dió coraje porque los otros lo acusaron. P.—¿Qué les dijo entonces él a los otros coacusados? R.—Bueno, fue la actitud de él la que me hace decir que le dió coraje."

■ La anterior evidencia vino al récord traída por el propio abogado de Eulogio Ortiz, sin que tampoco pidiera luego su eliminación. En *Alvarez Trinidad* repudiamos como al margen de la garantía constitucional de un acusado contra la incriminación forzosa, el intento del Ministerio Fiscal de traer a consideración del jurado por vía indirecta lo que no le era permisible de manera directa:—alegados elementos de culpabilidad por razón del silencio del acusado; agravada la situación con instrucciones del Tribunal al jurado que, rasgando

el manto protector de ese silencio, el efecto legal de las mismas fué instruirles que podían utilizar la conducta del acusado durante la investigación manteniendo silencio—lo cual constitucionalmente tenía derecho a hacer—, como elemento de prueba en su contra. *Alvarez Trinidad* nada tiene que corregir en este caso, en que sólo ocurrió lo ya dicho a instancias del acusado mismo, sin más comentarios ni instrucciones adversas del Tribunal.

Consideramos ahora conjuntamente el segundo, el tercer y el sexto error señalados. Al comenzar el juicio el apelante Ortiz Verdejo solicitó se le juzgara separadamente debido a ciertas circunstancias. Al oponerse dijo el Fiscal: "Nos parece a nosotros, señor juez, que la situación que plantea el compañero es a base de que el acusado que él representa no prestó declaración. . . . Los otros dos acusados prestaron declaración, y me imagino que el compañero teme que de ofrecerse en evidencia las declaraciones de los coacusados las consecuencias Su Señoría sabe cuáles serían". . . . Además de eso, argumentó el abogado defensor que su representado tenía una legítima defensa que podía ser socavada por lo que habían declarado los otros acusados quienes en su testimonio conectaban a su representado. La solicitud de juicio por separado fué declarada sin lugar, fundamentalmente porque de aparecer este acusado conectado con el delito en las confesiones de los otros coacusados, se instruiría al jurado al efecto de que dichas declaraciones no se tomaran en cuenta en cuanto a él. La moción de nuevo juicio de este mismo acusado se basó primordialmente en la negativa del tribunal a concederle juicio por separado como un error de derecho durante la sustanciación del proceso.

Desde que adoptamos el Enjuiciamiento Criminal en 1902, Art. 238, y hasta la Ley 1 de 10 de noviembre de 1950, todo acusado de delito grave podía exigir, como cuestión de derecho, un juicio por separado. A partir de esta Ley se

dispuso el juicio de dos o más acusados conjuntamente, y un juicio por separado quedó a discreción del Tribunal.

La disposición que aquí rigió durante casi medio siglo, que concedía el juicio por separado como cuestión de derecho en casos graves, tendía a evitar no pocos problemas serios en la administración de la justicia, particularmente en casos vistos ante jurado. A pesar de que California, de donde trasladamos el precepto hizo el juicio por separado discrecional desde el año 1921, nuestro Legislador tuvo a bien conservar la garantía inalterada hasta que en 1950, coetáneo con hechos que ocurrieron que son de conocimiento general, eliminó el derecho a un juicio por separado en casos graves, dejando en nuestros tribunales la función de salvaguardar, en uso de una buena discreción, los derechos de los acusados.

A partir de entonces hemos sostenido que un juicio por separado en casos graves descansa en la discreción del tribunal. *Pueblo* v. *Muñiz*, 77 D.P.R. 851, 854; *Pueblo* v. *Ortiz*, 76 D.P.R. 257, 263; *Pueblo* v. *Meléndez*, 80 D.P.R. 787, 788, escolio (2). En *Pueblo* v. *Casanova*, 77 D.P.R. 729, caso éste que no envolvía un problema de juicio por separado bajo el Art. 238, revocamos la sentencia porque no se transmitió al jurado una instrucción especial en el sentido de que una confesión podía ser utilizada sólo contra el declarante de la misma mas no contra otros coacusados incriminados en ella, para determinar la culpabilidad de éstos.

El juicio conjunto en casos graves, particularmente ante jurado, presenta a veces serios problemas de garantías procesales que han causado honda preocupación, entre ellos el problema de la evidencia dañina que es legalmente admisible en contra de un coacusado y no lo es en contra de otro. En estos casos, hay por lo menos el arma del contrainterrogatorio. Pero donde el problema se acerca peligrosamente a una negativa de juicio imparcial y justo y del debido procedimiento, ocurre en el caso de confesiones de acusados que incriminan a coacusados, por razón del estado de indefensión

en que estos últimos caen al no poder contrainterrogar a sus acusadores. Una gran pluralidad de las cortes en otras jurisdicciones han pretendido resolver este problema aplicando el principio seguido en *Casanova*, y se ha negado juicio por separado a base de que el tribunal siempre puede instruir al jurado que tome en consideración los hechos incriminatorios contenidos en una confesión sólo en cuanto al acusado que la hace. California ha mantenido un criterio cerrado sobre el particular y entiende que así se ofrece el remedio a la situación. Hay, sin embargo, otros criterios en la jurisprudencia muy autorizados por cierto, que niegan la efectividad del remedio. Así, por ejemplo, Illinois ha dicho, *People* v. *Sweetin*, 325 Ill. 245, 156 N.E. 354:

"Aunque generalmente es motivo de discreción de la corte el que se conceda un juicio por separado, tal discreción no es arbitraria, sino que debe ejercitarse para impedir la injusticia siempre que sea posible. Si bien la corte instruyó al jurado que las confesiones de Hight no eran admisibles contra el apelante, tal instrucción posiblemente no podía erradicar el testimonio de las mentes del jurado. Aunque teóricamente la instrucción eliminó la evidencia de la consideración del jurado, como cuestión práctica la mente humana está formada de tal modo que inevitablemente el efecto perjudicial quedó allí . . . Algunos de los casos han dicho que, bajo los más puros principios de justicia, si el fiscal intenta utilizar tal confesión, al acusado se le juzgará separadamente."

La sentencia condenatoria se revocó por la negativa de un juicio por separado.

El Juez Jackson, concurriendo en *Krulewitch* v. *United States*, 336 U.S. 440, en que se revocó la sentencia condenatoria por la admisión de evidencia relativa a la declaración de un co-conspirador meses después del acto de la conspiración, expresó: [pág. 453] "La cándida asunción de que los efectos perjudiciales se pueden vencer con instrucciones al jurado [cita] todos los abogados postulantes saben que es una redomada ficción."

En *Anderson* v. *United States*, 318 U.S. 350, revocando una sentencia condenatoria, dijo el Juez Frankfurter: [pág. 356]

"También, aunque el juez sentenciador aparece que admitió las confesiones 'sólo para ser usadas contra las personas que las hicieron,' sus instrucciones no limitaron al jurado a tal uso restrictivo de las confesiones . . . No hay razón para creer, por lo tanto, que confesiones que vinieron ante el jurado como un tejido orgánico de prueba puedan ser desunidas y dárseles un sentido de distribución por el hecho de sostener que ellas tuvieron una principal participación en la convicción de algunos de los peticionarios y del todo ninguna en cuanto a los otros."

Catorce años después, en su opinión disidente en *Delli Paoli* v. *United States*, 352 U.S. 232, a la cual se unieron tres otros Jueces, volvió a decir el Juez Frankfurter:

"El dilema se resuelve usualmente admitiendo dicha evidencia contra el declarante y advirtiendo contra su uso al determinar la culpabilidad de otros. El hecho al respecto es que muy frecuentemente tal amonestación contra el mal uso es intrínsecamente inefectiva, por cuanto el efecto de tal declaración no admisible no puede lavarse del cerebro de los jurados. La amonestación, por tanto, se convierte en una estéril disposición de palabras y fracasa en su objeto como una protección legal a acusados contra quienes tal declaración no debe contar."

El Juez Hand en *Nash* v. *United States* (C.A. 2) 54 F.2d 1006, confirmando una sentencia condenatoria, no obstante se expresó así, refiriéndose a una declaración escrita dada inmediatamente después del arresto:

"Se admitió en evidencia contra Keane sólo, y como su admisión, bajo el reconocido subterfugio de una instrucción al jurado de que limitara su uso a él nada más. Si tuviéramos que rehacer la ley de evidencia y conservar aun la regla sobre referencia, sería mejor el dejar fuera todo ello, pues la práctica, aunque bien sentada, es una evasión, y las evasiones son deshonrosas. No hay razón para que el fiscal, si opta por procesar a varios acusados conjuntamente, no deba estar limitado a la prueba admisible en cuanto a todos, y si ocurriera una verdadera injusticia el

resultado sería indeseable. En efecto, la regla probablemente ayuda, más bien que impide, la búsqueda de la verdad, y tal vez esto excusa el mecanismo que satisface la forma mientras que viola la sustancia; esto es, la recomendación al jurado de una gimnasia mental que no sólo está más allá de sus potencialidades, sino de las de cualesquiera otros."

Y en *United States* v. *Pugliese*, 153 F.2d 497 (C.A. 2) el propio Juez Hand observó: [500] "Hasta qué punto un jurado que ha oído prueba puede, en la práctica, usarla contra uno de varios acusados y no contra otros es muy cuestionable a lo más; la mayor parte de las personas no pueden pensar por compartimentos."

*United States* v. *Haupt*, 136 F.2d 661, revocándose una sentencia condenatoria en donde primero se negó un juicio por separado y luego un nuevo juicio, en una situación en que existía mucha evidencia en relación con la cual el jurado tendría dificultad en limitarla a cada acusado individualmente a quien le era aplicable, la Corte de Apelaciones del Séptimo Circuito expresó: [672]

"Dudamos que fuera dentro del ámbito de posibilidad para este jurado el limitar la consideración por su parte del efecto dañino de tales declaraciones al mero acusado contra quien se admitieron. Tenemos igual duda de que cualquier jurado, o por lo que respecta cualquier corte, pudiera ejecutar tal proeza hercúlea . . . No somos conscientes de ningún procedimiento que la corte pudiera haber ideado, que no fuera el juicio separado, en que estas declaraciones incriminatorias hubieran podido presentarse contra los acusados que las hicieron, sin perjudicar seriamente el derecho de los otros acusados."

Lo que le ocurre a la mente del jurado en estas situaciones hasta cierto punto lo vemos caracterizado con la fábula mencionada en 43 Cornell L. Q., pág. 128, del tesoro enterrado que podía ser encontrado por el agricultor, siempre que al cavar él no pensara en una luna llena. (6)

(6) Agradecemos en gran parte la anterior compilación de citas específicas a un memorando del entonces compañero y Juez Asociado, Hon. Raúl

Debemos repetir que los anteriores criterios son más bien selectivos que de opinión mayoritaria, y que no todos los casos reseñados envolvían juicio por separado, y en muchos, el problema real fue la falta de instrucciones adecuadas al jurado, como nuestro caso de *Casanova*. No obstante, este Tribunal ha tomado una posición bastante definida siguiendo más bien el criterio selectivo, por entender que así se garantiza mejor un juicio justo.

En *Reyes v. Tribunal Superior*, 84 D.P.R. 29 (1961), revisando por *certiorari* una orden denegatoria de un juicio por separado ante el problema aludido, dijo el Tribunal a través de una de sus Salas, tras una excelente y a la par persuasiva exposición del compañero Juez, Sr. Dávila:

"Considerado todo lo expuesto y como debe ser norma de todo tribunal el que la justicia tenga siempre precedencia sobre los precedentes nos parece que lo justo y razonable es celebrar juicios separados en aquellos casos en que uno de los acusados ha prestado una confesión que afecte adversamente al otro acusado. Así, debe ser norma de los tribunales de instancia examinar la declaración que intenta presentar el fiscal y determinar si la alusión que en ella se hace al otro acusado le afectaría adversamente y a la vez plantearse el siguiente problema ¿el juicio por separado le garantiza al acusado un juicio más justo e imparcial que si se le celebrara conjuntamente? Si la contestación es en la afirmativa la discreción deberá ejercitarse concediendo el juicio por separado." (Citas.)

La orden denegatoria de juicio por separado fue revocada. Ratificamos una vez más la norma adoptada, que sigue en términos generales la seguida por Illinois ha mucho tiempo. Ante una moción de juicio por separado las Salas de instancia no deben despachar el asunto fácilmente a base de que si surge el problema crucial, se le darán las pertinentes instrucciones al jurado. Deben hacer una detenida deliberación sobre el problema buscando todos los elementos de juicio que le

Serrano Geyls, circulado en relación con la opinión que escribiera para el Tribunal en el caso de *Confesor Meléndez*, ya citado. Y véase el escolio (2) en dicho caso, 80 D.P.R. a la pág. 788.

permitan determinar a conciencia si habría o no un juicio imparcial y justo. Ante la más leve duda de que no lo hubiera, la discreción debe ser buena concediéndose el juicio por separado.

▇▇ Ahora, resolviendo el caso que tenemos ante nos, habremos de atenernos a la situación normativa prevaleciente cuando la Sala sentenciadora negó el juicio por separado y negó el nuevo juicio. Habremos, por lo tanto, de examinar el récord para ver si las circunstancias fueron tales que la admisión de las confesiones de otros dos acusados que incriminaban a Ortiz Verdejo privaron a éste de un juicio imparcial y justo, no obstante las instrucciones al jurado. Hay que decir que la Sala sentenciadora demostró un encomiable celo en dichas instrucciones, que repitió una y otra vez en todas las ocasiones oportunas al efecto de que nada de lo dicho en esas confesiones podría ser usado por el jurado en contra de este otro coacusado. Si tuviéramos la más leve duda que este acusado no tuvo un juicio justo por tal razón, revocaríamos y le ordenaríamos un juicio a él. Pero no la tenemos a la luz de todas las circunstancias tenidas en cuenta. Hubo prueba, de un testigo ocular, convincente para cualquier jurado, sobre la participación directa de Ortiz Verdejo en la perpetración de la muerte. La prueba de cargo fué breve, sencilla, sin complicaciones que pudieran ofuscar al jurado. Los dos acusados que confesaron no presentaron prueba alguna, y Ortiz Verdejo se defendió a base de una prueba de coartada no muy convincente, por cierto, que indudablemente el jurado tenía base para no creer. Cfr: *Delli Paoli* v. *United States*, antes citado; *United States* v. *Gottfried*, 165 F.2d 360 (C.A. 2) (pág. 367). En cuanto a este coacusado, único que pidió se le juzgara separadamente, no hay razón para revocar la sentencia por ese fundamento ni tampoco en cuanto a los otros que no hicieron tal solicitud.

▇▇▇ El sexto error señalado es consecuencia del hecho de no haberse concedido un juicio por separado y de la situa-

ción apuntada. Es innegable el derecho de un acusado a producir prueba que tienda a demostrar el interés de un testigo acusador en su contra, pero los coacusados que declararon incriminando a Verdejo no ocuparon la silla de testigos, y la confesión de ellos se admitió únicamente para tener efecto en cuanto a los mismos y no en cuanto a Verdejo. Aparte del hecho en sí de la necesidad de que hubiera habido un juicio por separado, en derecho no surgió el problema objeto del sexto señalamiento de error. El séptimo señalamiento al efecto de que la sentencia condenatoria fué contraria a la prueba y a derecho es insostenible a la luz del récord. La prueba creída por el jurado sostiene un veredicto de asesinato en primer grado.

*Las sentencias condenatorias serán confirmadas en cuanto a todos los apelantes.*