EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* MARCELINO SANTOS LÓPEZ, acusado y apelante.

*Número:* CR–62–43 *Resuelto:* 8 de marzo de 1963

*Ismael H. Herrero, Jr.,* nombrado por el Tribunal Supremo para que representara al apelante ante este Tribunal, abogado del apelante; *J. B. Fernández Badillo, Procurador General, Héctor R. Orlandi Gómez, Procurador General Auxiliar,* y *Jenaro Marchand,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

El efecto acumulativo de los tres errores que discutiremos a continuación requiere que dejemos sin efecto la sentencia

dictada por el Tribunal Superior, Sala de Arecibo, condenando al apelante Marcelino Santos López a sufrir penas indeterminadas de 15 a 26 años de presidio, para ser cumplidas en forma concurrente, por dos cargos de escalamiento en primer grado subsiguiente, y ordenemos la celebración de un nuevo juicio. Cfr. *Pueblo* v. *Túa*, 84 D.P.R. 39 (1961).

1—En ausencia del jurado, y a los fines de establecer el carácter voluntario de una declaración prestada por el apelante a raíz de la comisión de los hechos que se le imputaban, se produjo prueba consistente en el testimonio del fiscal Efraín F. Crespo, quien declaró ampliamente sobre las circunstancias que rodearon la toma de la confesión. El acusado ocupó entonces la silla de testigos y aseveró que había prestado declaración bajo amenazas de los detectives, "amedrentado", y bajo la promesa de "hacerlo testigo de El Pueblo de Puerto Rico." Al terminar la presentación de prueba sobre este aspecto del caso, el tribunal expresó que:

"La corte entiende que la declaración que se prestó en este caso fue producida con absoluta voluntariedad del acusado, el acusado en el caso llamado Marcelino Santos; que no ha creído, por su manera de declarar, interesada, prejuiciada en contra del fiscal y de la teoría del fiscal, que él hubiera estado amonestado por la policía anterior al momento de la declaración. Tampoco ha dicho la verdad en relación con que el fiscal le prometió hacerlo testigo de El Pueblo de Puerto Rico. Además, el testigo Marcelino Santos López, en la silla, sirviendo como testigo, no ha dicho que el contenido en esta declaración sea falso ni tampoco ha dicho, a pesar de que el tribunal trató de investigar si esto que dice aquí fue recitado, es decir, insinuado por el fiscal, a lo cual contestó el testigo que no; que el fiscal no lo coaccionó, que el fiscal no le dijo lo que tenía que declarar; que eso lo declaró él y que lo declaró porque le ofrecieron hacerlo testigo de El Pueblo de Puerto Rico. No creemos esa última versión que hemos anotado porque su testimonio como testigo de El Pueblo de Puerto Rico no afectaría, a nuestro entender, al coacusado Pagán. Por todas esas razones, entendemos que la declaración se prestó con el consentimiento voluntario del acusado Marcelino Santos." (T.E., pág. 139.)

Seguidamente, en presencia del jurado, tuvo lugar el siguiente incidente (T.E., pág. 142, 143–144) :

"Hon. Fiscal: . . . Nosotros tenemos una declaración jurada y vamos a sentarnos para declarar sobre la voluntariedad la declaración que prestara el acusado Marcelino Santos López. *Como cuestión de derecho se determinó* y ahora corresponde al Jurado. Hon. Juez: Creo que no hay que sentarse ahora. Hon. Fiscal: Creo que sí. Presentamos en evidencia una declaración jurada prestada por Marcelino Santos el 23 de mayo de 1959.

. . . . . . . .

Abogado Sr. Ramos: Nosotros tenemos que decir al tribunal que objetamos la admisión de este documento por considerar que el mismo, el contenido del mismo, no fue dado por mi representado voluntariamente.

Hon. Juez: *La corte resolvió lo contrario.* La corte admite ese documento y se marca como exhibit Núm. 17 de El Pueblo, y siendo consecuente con su resolución anterior se ordena que se lea.

(La sub-secretaria empieza a dar lectura en alta voz al documento admitido.)

Hon. Juez: Antes de que continúe la lectura de ese documento, damas y caballeros del Jurado, pongan atención al documento porque terminada la lectura del mismo ameritaría una instrucción a ustedes y el dique de una resolución de la corte en cuanto a la naturaleza de la declaración.

(La sub-secretaria continúa dando lectura al documento en alta voz.)

Abogado Sr. Juliá: Nosotros vamos a pedir que, a nombre de nuestro representado, se de la instrucción de rigor en un caso de esta índole al Jurado.

Hon. Juez: *Damas y caballeros del jurado, como cuestión de derecho la corte resolvió, después de oir prueba, de que esta declaración fue prestada voluntariamente por Marcelino Santos. Ustedes, por los términos de esta declaración y por el conjunto de la prueba pasada en este caso, y que se ha de pasar, ustedes pueden entrar sobre la voluntariedad o no voluntariedad de la declaración."* (Bastardillas nuestras.)

Al comenzar la sesión al siguiente día, el juez a quo hizo las siguientes manifestaciones (T.E., págs. 161–162) :

"Hon. Juez: . . . Debo hacer una rectificación en cuanto a una determinación que se produjo ayer en relación con la declaración del acusado y del señor fiscal en relación con la voluntariedad de la declaración que se intentaba presentar en evidencia, prestada por el acusado Marcelino Santos. Después de declarar Marcelino Santos López nosotros declaramos, como cuestión de derecho, que se había producido con voluntariedad. La parte, sin objeción de la parte acusada, ofreció en evidencia el documento y se le leyó el documento al Jurado. De momento entendimos que podía pasar esa situación ya que la parte la aceptaba. Pero meditando después he llegado a entender que nos desviamos sustancialmente de la regla procesal. Así, tenemos que volver atrás para seguir el curso de la prueba que se pretende seguir ahora por el fiscal en el sentido de que se sienten en la silla ante el Jurado las personas que declararon para la corte haber producido la determinación que se produjo y que no fue delante del Jurado."

Acto seguido se trajo el jurado a sala y nuevamente declararon el fiscal Crespo y el acusado Santos sobre la voluntariedad de la confesión. Al terminar estos testimonios, el juez indicó al jurado que "Ha pasado prueba ante ustedes sobre la voluntariedad del documento. Ustedes tendrán facultad para apreciar la veracidad de ese documento en su totalidad o en parte" (T.E., pág. 186). Luego, a insistencias del abogado de otro coacusado, expresó que "he de instruirles que ustedes, como cuestión de hecho, van a determinar si esta declaración se prestó voluntariamente, conscientemente, por Marcelino. Así, después de llegar a la conclusión de que hubo voluntariedad al prestarla, entonces tienen ustedes facultad para calibrar, para pesar esta declaración sobre su veracidad" (T.E., pág. 189). Al dar las instrucciones finales el magistrado reiteró que "el primer paso, la primera acción que tienen que hacer es determinar si fue voluntaria o no fue voluntaria. Si no fue voluntaria, no debe ser considerada con el conjunto de la prueba. Si entienden que fue voluntaria debe ser considerada por ustedes y entonces determinar si toda esa declaración constituye una

pieza de verdad o si esa declaración dice verdad y en parte no la dice" (T.E., págs. 247–248).

 *Pueblo* v. *Fournier*, 77 D.P.R. 222, 258 (1954), citando a *Pueblo* v. *Medina*, 72 D.P.R. 254 (1951), *Pueblo* v. *Otero*, 67 D.P.R. 404 (1947) y *Pueblo* v. *Declet*, 65 D.P.R. 23 (1945), expone este aspecto de la admisibilidad de confesiones, e indica que el tribunal debe pasar preliminarmente sobre el carácter voluntario, y al efecto debe oir la prueba de las partes sobre el particular.[1] Si la evidencia establece como cuestión de derecho que la confesión fue involuntaria, la misma se excluye y no se le presenta al jurado; pero si es contradictoria, el tribunal *no pasa sobre su admisibilidad*, sino que llama al jurado, se repite en su presencia la evidencia sobre el carácter voluntario y se le somete al jurado con las instrucciones adecuadas. *Pueblo* v. *Pérez Martínez*, 84 D.P.R. 181 (1961).

En *Pueblo* v. *Andrades González*, 83 D.P.R. 849 (1961), el juez manifestó en relación con una declaración prestada por el acusado, que existían "elementos de voluntariedad" para ser admitida su declaración, pero aclaró que esta determinación previa no tenía otro alcance que justificar la actuación del tribunal para someter la misma a la consideración del jurado. Sin embargo, añadió clara y explícitamente que era a este cuerpo deliberativo al que correspondía determinar si las manifestaciones extrajudiciales del acusado se hicieron libre y espontáneamente. Al disponer de un señalamiento de error similar al que se plantea ahora por el apelante Santos, dijimos que "Así, el juez le hizo claro al jurado que eran ellos los que tenían que hacer la determinación final sobre la voluntariedad."[2]

---

[1] En *Fournier* expresamos que en esta etapa de los procedimientos la prueba debe recibirse preferiblemente en ausencia del jurado. En *Pueblo* v. *Andrades González*, 83 D.P.R. 849 (1961), señalamos que "siempre se debe retirar al jurado."

[2] Es importante aclarar que, contrario a lo que sucede en este caso, en *Andrades* el acusado no presentó prueba alguna para establecer que su confesión fue involuntaria.

■ La narración que hemos hecho del incidente sobre la determinación del carácter voluntario de la confesión prestada por el acusado demuestra que el juez se apartó en forma sustancial de la regla local, y que indicó al jurado su apreciación personal sobre la cuestión haciéndole saber que a su juicio era voluntaria. Obsérvese que la manifestación al respecto no estuvo cualificada como en el caso de *Andrades* al hecho de que existían elementos que señalaban voluntariedad para justificar que se le sometiera la prueba al jurado. No, fue una expresión categórica. Es cierto que posteriormente el mismo juez instruyó al jurado sobre la facultad que dicho cuerpo tenía para hacer la determinación final sobre el particular, pero en ningún momento les indicó que descartaran completamente su manifestación anterior de que "Como cuestión de derecho se determinó [la voluntariedad] y ahora corresponde al jurado." Es especialmente significativo que el magistrado admitió expresamente ante el jurado la comisión de otro error sobre el efecto probatorio de la admisibilidad de la confesión en relación con el otro coacusado, [3] pero que no hizo igual reconocimiento en forma explícita y clara sobre lo inapropiado de su apreciación sobre el carácter voluntario de ésta. Todo cuanto indicó fue lo que aparece en la página 628 de esta opinión. Pero esta manifestación fue en ausencia del jurado, y, por tanto, no puede haber tenido el efecto de borrar cualquier impresión adversa al acusado que los jueces de hecho pudiesen haber derivado de la anterior expresión del magistrado sobre el carácter voluntario de la confesión.

■ 2. En el curso de las instrucciones al jurado sobre los posibles veredictos el juez sentenciador se expresó en la forma siguiente (T.E., pág. 263):

"Si las damas y caballeros del Jurado, después de apreciar toda la prueba en conjunto, llegan a la conclusión, fuera de

---

[3] "Ayer os di una instrucción contraria a esta que os voy a dar . . . Necesitamos rectificar. Rectificar es humano . . ." (T.E., págs. 190–191.)
El coacusado fue declarado no culpable por el jurado en ambos cargos.

toda duda razonable, de que el día de autos, nos referimos al día 23 de mayo de 1959, o sea, en la noche del 22 al 23 de mayo de 1959, en el término municipal de Ciales, Puerto Rico, con intención de cometer hurto o ratería o un delito grave, penetraron durante la noche en el establecimiento comercial propiedad de Eugenio Rivera Santos para realizar hurto o ratería, *como lo realizaron,* y que ambos acusados para así realizar tales hechos estuvieron en concierto e inteligencia para llegar a realizar el escalamiento, ustedes deben producir un veredicto de culpabilidad de escalamiento en primer grado." (Bastardillas nuestras.)

Una vez más una apreciación personal del juzgador llegó a conocimiento del jurado. No podemos determinar hasta qué punto las instrucciones generales sobre la presunción de inocencia([4]) y duda razonable puedan haber desvirtuado cualquier impresión obtenida por los miembros del jurado de estas manifestaciones equívocas del tribunal. Adviértase que si se intentaba describir el delito imputado la expresión "como lo realizaron" era completamente superflua, pues la instrucción era completa y suficiente sin la misma. El hecho de seguirse las palabras de la acusación no justificaban—sin una aclaración en ese sentido—que se utilizara la **frase** objetada.

■ 3—Después de admitida y leída al jurado en *dos ocasiones* la declaración extrajudicial del acusado se le entregó la copia de la misma al jurado que la tuvo ante sí en el curso de sus deliberaciones. Tanto en *Pueblo* v. *Ramos Cruz,* 84 D.P.R. 563 (1962), como en *Pueblo* v. *Cruz Jiménez,* 87 D.P.R. 133 (1963), hemos resuelto que ello constituye error porque viola las disposiciones expresas del Art. 274 del Código de Enjuiciamiento Criminal, 34 L.P.R.A. sec. 783.

---

([4]) Tampoco fue muy feliz en su expresión el juez sentenciador al resumir la instrucción sobre presunción de inocencia cuando dijo que "Su presunción de no culpable le sigue asistiendo hasta el momento mismo en que ustedes produzcan un veredicto después de estudiada toda la prueba," (T.E., pág. 252), pues la misma es susceptible de ser interpretada en el sentido de que el único veredicto posible es de culpabilidad. La instrucción correcta debe ser que la presunción le asiste hasta que se le declare culpable después de considerar la prueba.

No obstante, la comisión de este error no produjo la revocación porque el mismo no fue perjudicial a los allí acusados. En este caso concurren las mismas circunstancias que consideramos en el de *Cruz* para resolver que el error no fue perjudicial—no se presentó prueba de defensa y la prueba de cargo fue sencilla y corta, sin conflictos internos. Es curioso que el propio tribunal indicara a los miembros del jurado que "Sepan los jurados que la lectura de este documento se le hace para que la tengan en el recuerdo, en su retentiva. No obstante de eso, la declaración va a formar parte de todos los instrumentos y material de evidencia que se ha presentado aquí cuando vayan a deliberar" (T.E., pág. 186).

▮ Como indicamos al comienzo de esta opinión, es posible que alguno de estos errores, por sí solo, no fuera perjudicial o suficiente para requerir la revocación de la sentencia condenatoria, pero apreciados en conjunto y por su efecto acumulativo, (⁵) es claro que el apelante no tuvo un juicio justo. *Se revocarán las sentencias dictadas por el Tribunal Superior, Sala de Arecibo, en 20 de octubre de 1959.*

---

(⁵) Es innecesario discutir otros dos errores señalados en el hábil alegato que a nombre del apelante presentó el Lic. Ismael H. Herrero, Jr., a quien designamos para que le prestara servicios en la tramitación del recurso de apelación. Deseamos hacer constar que el alegato revela estudio y devoción a la causa que se le encomendó.