EL PUEBLO DE PUERTO RICO, acusador y apelado, *v.* ISMAEL ÁLVAREZ TRINIDAD y otros, acusados y apelantes.

*Número:* 16758    *Resuelto:* 5 de junio de 1962

*Angel Viera Martínez,* abogado de los apelantes; *J. B. Fernández Badillo, Procurador General, Arturo Estrella, Procurador General Interino, Genoveva R. de Carrera, Procurador General Auxiliar* y *Rodolfo Cruz Contreras, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Asociado señor Belaval como Presidente de Sala y los Jueces Asociados señores Hernández Matos y Santana Becerra.

EL JUEZ ASOCIADO SEÑOR BELAVAL emitió la opinión del Tribunal.

De los errores señalados por los acusados apelantes sólo consideraremos aquellos relacionados con la admisión por silencio. La prueba que desfiló ante el jurado, durante la declaración del detective Manuel Castellano Rivera, fue la siguiente:

FISCAL—"Estando Raúl Álvarez Trinidad presente, que es acusado en este caso, y estando presente Benjamín Trinidad Aponte, la pregunta es: si el Sr. Carmelo Carmona le manifestó al Sr. Raúl Álvarez Trinidad, que es acusado en este caso, si le dijo algo, si manifestó algo estando presente ese acusado allí."

. . . . . . . . .

TESTIGO—"Carmelo Carmona le imputó a Raúl Álvarez que él era la persona que manejaba el automóvil cuando le pasaron el automóvil por encima al cuerpo de Jesús Cardona."

FISCAL—"Cuando dijo eso el Sr. Carmelo Carmona en presencia suya, de este Fiscal y en presencia del mismo Raúl Álvarez, acusado en este caso, de Quinco, ¿qué contestó Quinco si contestó algo?"

TESTIGO—"Permaneció callado." (t. 185.)

. . . . . . . . .

FISCAL— . . . "¿Sabe usted, testigo si el Sr. Raúl Álvarez Trinidad, Quinco, conocido por Quinco, en algún momento estando presente el Sr. Carmelo Carmona y ante la imputación o lo que usted ha declarado aquí que le dijo Carmelo Carmona a él, a Raúl Álvarez Trinidad, durante el tiempo que estuvo en Fiscalía en algún momento negó los hechos que le imputó Carmelo Carmona a él?"

TESTIGO—"No, señor, permaneció callado." (t. 188.)

Contrainterrogado por el abogado de la defensa sobre este particular, el testigo Castellano, declaró:

DEFENSA—"¿En algún momento Raúl Álvarez Trinidad admitió los hechos que se le imputaban?"

TESTIGO—"No señor."

DEFENSA—"¿Siempre los negaba?"

TESTIGO—"No señor."    (t. 204.)

.    .    .    .    .    .    .    .    .

TESTIGO—"Siempre nos dijo aceptando que había estado en Dorado, que había estado en la Playa de Cerro Gordo y que habían dejado a Jesús Cardona en el sitio que lo encontraron pero sano y salvo."    (t. 204-205.)

.    .    .    .    .    .    .    .    .

DEFENSA—"¿Luego, entonces, usted nos dice que él explicó todo lo que había pasado, pero en ningún momento aceptó que había hecho esos hechos que dice Carmona que hizo?  ¿Verdad que él nunca los aceptó?"

TESTIGO—"Nunca."

DEFENSA—"Y eso lo decía de palabra, no callado, de palabra, lo expresaba con la boca?"

.    .    .    .    .    .    .    .    .

DEFENSA—"Eso que él dijo, los sitios que había estado."

TESTIGO—"Si, señor, eso lo dijo."    (t. 206.)

El ilustrado Juez que presidió el proceso, al referirse a esta admisión por silencio, le dio al jurado las siguientes instrucciones: "Normalmente [una] admisión la hace la parte misma pero otras veces se puede hacer por adopción o sea, que no es la parte quien habla sino que la parte adopta, incorpora ese sentir, manifestaciones de otra parte, esa conducta la hace suya.  Me voy a explicar: Se está investigando un asesinato, no se sabe quien ha matado a la víctima, me llaman a mí para investigación y yo estoy en la oficina del fiscal, yo no hablo; entonces llega el Lic. Franco Santiago y le dice al Fiscal: 'A ese muerto que están investigando quien lo mató con un tiro fue Idrach; Idrach fue quien lo mató.'  Yo estoy oyendo eso, yo no digo nada, la ley dice que esa es una admisión por adopción.  La ley contempla que yo debo saltar y decir: 'No es verdad eso, yo no fuí.'  Pero si yo me quedo callado eso constituye una admisión por adopción." ■

La ley aplicable al caso es el inciso 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, que dispone: "Nadie será obligado a incriminarse mediante su propio testimonio *y el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra.*" (Énfasis suplido.)

Con anterioridad a la adopción de nuestra regla constitucional, regía en Puerto Rico, la disposición del art. 2 de la Carta Orgánica de 1917, en el sentido, que: "Ninguna persona . . . será obligada en ninguna causa criminal a ser testigo contra sí misma" y el art. 7 de nuestro Código de Enjuiciamiento Criminal, en el sentido, que: "A nadie podrá obligarse a declarar en contra suya en un proceso criminal", disposiciones parecidas a la garantía constitucional del Art. V de la Constitución de los Estados Unidos de América, en el sentido, que: . . . "Nadie . . . será compelido en ningún caso criminal a declarar contra sí mismo", que es la que sirve de modelo a las constituciones y los estatutos particulares de los estados de la Unión.

Con vista a esta última disposición federal, la jurisprudencia norteamericana desarrolló la tesis pragmática que el silencio del acusado no debía tenerse en cuenta por el jurado ni comentarse por el Ministerio Fiscal y le impuso al juez que presidiera el proceso la obligación de recriminar la conducta del Ministerio Fiscal y dar inmediatamente al jurado una instrucción específica sobre la obligación del jurado de no tener en cuenta cualquier comentario sobre el silencio del acusado. Nuestra regla local se inspiró en esta tesis pragmática: *Pueblo* v. *Díaz*, 69 D.P.R. 621, 629 (1949); *Pueblo* v. *Estrada*, 51 D.P.R. 815, 820 (1937). ■

En cuanto al silencio del acusado durante el proceso de la investigación, que es el momento cuando se producen las llamadas admisiones por adopción, las admisiones tácitas o las excepciones a la prueba de referencia, se establecieron cinco requisitos para hacer admisibles las llamadas admisiones tácitas—entendidas como tales las inculpaciones no

contradichas ni protestadas por el acusado durante la investigación: — (1) Que la declaración constituyera una declaración extrajudicial—o sea, fuera del proceso criminal ordinario—de naturaleza inculpatoria o acusatoria; (2) que fuera una ante la cual un hombre inocente, en una situación parecida a la del investigado, contestaría; (3) que la inculpación o la acusación fuera hecha en la presencia del investigado y éste pudiera oirla; (4) que él pudiera entender el significado de dicha declaración y (5) tuviera la oportunidad de negar o contestar la declaración en su contra: 2 Wharton's *Criminal Evidence* 162, sección 409, edición de Lawyers Cooperative Publishing Company de 1955.

Esta regla pragmática, contrario a lo que se da por sentado, no satisfizo las exigencias críticas de los juristas. En primer lugar, estaban demasiado vivas en la conciencia las anteriores experiencias inquisitoriales de los métodos medioevales de la investigación criminal; en segundo lugar, el desarrollo de las ciencias psicológicas demostró el enrarecimiento de la conducta, la tupidez mental, el pánico emocional que sufre una persona bajo arresto; en tercer lugar, no se podía establecer dentro de una regla homogénea, la diferenciación de actitudes entre un delincuente ocasional y un delincuente habitual, con sus distintos matices de astucia, encallecimiento morfial, etc.

La jurisprudencia más progresista empezó por extender al proceso de la investigación la misma garantía constitucional contra la autoincriminación que cubre el proceso criminal: *Helton* v. *United States*, 221 F.2d 338, (Wright), (1955), cita precisa a las págs. 341–342; *Crabb* v. *State*, 192 P.2d 1018 (Jones), (1948), cita precisa a las págs. 1021–1022; *McGrew* v. *State*, 293 P.2d 381 (Jones), (1956), cita precisa a las págs. 385–386; la vieja regla de Massachusetts, en el sentido, que el mero hecho de estar bajo arresto y acusado de un delito una persona, hacía inadmisible cualquier declaración hecha en su presencia que lo incriminara,

aunque el arrestado no la contradijera, se ha ido imponiendo, en otras jurisdicciones: 115 A.L.R. 1517–1919 (1938); 29 New York University Law Review 1271–1272 (1954); la protección del sospechado, víctima del sufrimiento, del temor a ser mal interpretado, de su concepto popular que "cualquier cosa puede incriminarlo", cada día toma más cuerpo en la jurisprudencia: 77 A.L.R.2d 463–466.

Hay que suponer que cuando nuestra Convención Constituyente se reune, tiene conocimiento tanto de nuestras anteriores disposiciones constitucionales y estatutarias del 1917 y del 1902 como de nuestras decisiones del 1937 y 1949, en cuyas últimas se adoptó la regla pragmática de inmediata recriminación e instrucción especial. El énfasis que contiene el inciso II del Art. II de nuestra Constitución, en el sentido, que "el silencio del acusado no podrá tenerse en cuenta ni comentarse en su contra" parece resumir la moderna tendencia de evitar todo riesgo inquisitorial en nuestro proceso de investigación criminal, y toda admisión por Silencio. ■

Siendo esto así, debemos concluir que tal como quedó adoptado el inciso 3 de la sección 11 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, el silencio del arrestado al enfrentarse a la inculpación de un copartícipe, cómplice, o persona particular durante la investigación criminal o durante el proceso criminal no debe tenerse en cuenta, ni comentarse en su contra, bien se considere como una admisión por adopción, admisión tácita o excepción a la prueba de referencia por formar parte de nuestra garantía constitucional ante la autoincriminación, y es el deber de nuestros Tribunales no admitir tal prueba y el deber de nuestros Fiscales abstenerse en absoluto, durante el proceso, de hacer cualquier comentario que dé margen a una inferencia sobre una posible admisión por silencio.

Examinada la instrucción dada por el ilustrado Juez que presidió el proceso, tanto bajo la anterior regla pragmática,

con sus cinco supuestos de admisibilidad, como bajo la nueva regla constitucional, la misma resulta errónea y perjudicial, no sólo al acusado mencionado en la inculpación, sino al resto de los acusados, puesto que el caso se vio conjuntamente contra todos los acusados y el veredicto se rindió contra todos en el mismo grado. Como el caso ha de verse otra vez, nos abstendremos de comentar el resto de los errores señalados.

*Debe revocarse la sentencia dictada y ordenarse la celebración de un nuevo juicio.*