El Pueblo de Puerto Rico, demandante y apelado, *v.* Raúl Couret Martínez, acusado y apelante.

*Número:* CR-62-160    *Resuelto:* 30 de septiembre de 1963

*Vicente J. Antonetti,* abogado designado por el Tribunal Supremo para ofrecer asistencia legal en apelación al acusado; *J. B. Fernández Badillo, Procurador General,* y *Jenaro Marchand, Procurador General Auxiliar,* abogados de El Pueblo.

Sala integrada por el Juez Presidente Señor Negrón Fernández y los Jueces Asociados Señores Blanco Lugo y Ramírez Bages.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

Los dos primeros errores que señala el apelante para solicitar la revocación de la sentencia de 10 a 30 años de presidio que le fuera impuesta al ser convicto del delito de asesinato en segundo grado se relacionan con a) el carácter voluntario de las confesiones por él prestadas en el curso de la investigación del fiscal; y, b) la actuación del tribunal al permitir que el jurado tuviera durante el curso de sus deliberaciones el documento escrito que contenía su confesión. A Couret Martínez se le procesó atribuyéndosele haber agredido con una piedra a la anciana doña Leticia Torres—era una octogenaria que vivía en la región rural de Yauco—causándole la muerte.

1—El procedimiento seguido por el tribunal de instancia en relación con la determinación del carácter voluntario de las confesiones prestadas por el acusado—una oral y la otra escrita—se ajustó estrictamente a la norma imperante en esta jurisdicción. *Pueblo* v. *Santos López*, 87 D.P.R. 624 (1963); *Pueblo* v. *Andrades*, 83 D.P.R. 849, 855 (1961); *Pueblo* v. *Fournier*, 77 D.P.R. 222, 258 (1954); *Pueblo* v. *Medina*, 72 D.P.R. 254 (1951); *Pueblo* v. *Otero*, 67 D.P.R. 404 (1947); *Pueblo* v. *Declet*, 65 D.P.R. 23 (1945), pues al intentarse por el ministerio fiscal la presentación en evidencia de la confesión escrita, el magistrado que dirigía el proceso, retiró el jurado, y en ausencia de éste, recibió prueba sobre las circunstancias que rodearon la prestación de la declaración. El fiscal ofreció el testimonio de una serie de testigos para establecer el carácter voluntario de la confesión; el apelante descansó únicamente en su testimonio. Luego de desfilar esa prueba, el juez—en ausencia del jurado—expresó que siendo la prueba contradictoria, procedía someter la cuestión a los jueces de los hechos. Inmediatamente así se hizo, excepto que ante el jurado solamente se reprodujeron los testimonios de los testigos ofrecidos por el Estado, ya que el acusado se abstuvo entonces de declarar. Resumiendo, la única prueba que tuvo ante sí el jurado lleva, como veremos a continuación, a la

conclusión inevitable de que las confesiones prestadas fueron voluntarias.

Dicha prueba fue al efecto de que, encontrándose el apelante en compañía de varias personas en un cafetín cercano al lugar de los hechos, fue invitado por un policía a que le acompañara, a lo cual aquél accedió; que se dirigieron al cuartel de la policía de Yauco, en donde permanecieron alrededor de hora y media, hasta las 7:30 P.M.; que luego se le condujo a Ponce, y de allí a Yauco cerca de las 11:00 P.M.; que en Ponce fue interrogado por el Fiscal Pérez Regis en el Hospital de Distrito; que al regresar a Yauco le dieron pan y le compraron cigarrillos; que al siguiente día, el acusado desayunó y almorzó; que fue conducido nuevamente a Ponce; que cuando el detective Mercedes Rivera le informó en el cuartel de la Policía de esta última ciudad que la señora Torres había fallecido, el acusado manifestó: "Si murió voy a decir la verdad", y acto seguido, admitió que la había golpeado con una piedra, y que había realizado el hecho porque la víctima lo había insultado cuando él intentó cobrarle un dinero que ella le adeudaba, pero negó que la hubiera ultrajado; que inmediatamente fue llevado a la fiscalía y allí, previas las advertencias de rigor, relató los hechos en forma similar a preguntas del Fiscal Pérez Regis. Mediante el testimonio de los agentes del orden público que intervinieron en esta etapa de la investigación—el Teniente Rafael Irizarry, el policía Rómulo Alvarado y el detective Mercedes Rivera—de los taquígrafos que presenciaron la toma de la declaración y de un redactor del periódico El Imparcial que se encontraba en la oficina del fiscal mencionado se estableció que en momento alguno medió violencia, coacción física o psicológica, amenazas o promesas para obtener las confesiones.

A la luz de las circunstancias expuestas surge meridianamente que ambas confesiones fueron espontáneas. Existe una ausencia total de las condiciones bajo las cuales cabe sostener que la confesión prestada está teñida de ilegalidad

por ser involuntaria. *Pueblo* v. *Amador Moreno*, resuelto en 19 de junio de 1963; *Pueblo* v. *Martínez Figueroa*, 86 D.P.R. 413 (1962); *Pueblo* v. *Ramos Cruz*, 84 D.P.R. 563 (1962); *Pueblo* v. *Pérez Martínez*, 84 D.P.R. 181 (1961); *Pueblo* v. *Meléndez*, 80 D.P.R. 787 (1958); *Pueblo* v. *Fournier*, 80 D.P.R. 390 (1958); *Pueblo* v. *Fournier*, 77 D.P.R. 222 (1954).

■ 2—Contrario a lo dispuesto en el Art. 274 del Código de Enjuiciamiento Criminal entonces vigente, 34 L.P.R.A. sec. 783, el tribunal a quo permitió que pasara al jurado la confesión escrita prestada por el acusado. (¹) Al así hacerlo, erró, *Pueblo* v. *Ramos Cruz*, supra, pero conforme a lo allí expuesto—ratificado en *Pueblo* v. *Cruz Jiménez*, 87 D.P.R. 133 (1963) y *Pueblo* v. *Santos López*, supra—esta actuación no produce indefectiblemente la revocación de la sentencia a menos que se demuestre que el error cometido fue claramente perjudicial. En *Ramos Cruz*, señalamos que el hecho de haber el acusado admitido oralmente a varias personas la comisión de los hechos, según los testimonios desfilados, eclipsaba el error cometido pues "difícilmente la confesión escrita podía recordarle más al jurado que los varios testimonios presentados en el juicio de personas a quienes el acusado confesó los hechos." Y en *Cruz Jiménez*, consideramos que los acusados no presentaron prueba de defensa y que la prueba de cargo sobre los hechos fue sumamente sencilla y corta, sin que tuviera problemas de conflicto en sí misma. En el presente caso, hemos examinado la transcripción de la evidencia practicada durante el proceso—que, incidentalmente, se celebró antes de emitirse nuestra opinión en *Ramos Cruz*—y aunque ésta fue extensa, se trata de prueba sencilla y para todos los fines, incontrover-

---

(¹) La Regla 140 de las de Procedimiento Criminal de 1963 contiene disposiciones sustancialmente idénticas: "Al retirarse a deliberar, el jurado deberá llevarse consigo todo objeto o escrito admitido en evidencia, *excepto las deposiciones*." El término "deposiciones" aquí usado incluye la confesión escrita del acusado. Véase, la discusión sobre este asunto en *Pueblo* v. *Ramos Cruz*, supra.

tida, pues el único testigo presentado por la defensa se limitó a situar al acusado hasta el mediodía en un lugar distante del sitio de los hechos, cuando el hecho delictivo sucedió después de la 1:30 de la tarde. Además, la confesión escrita es una réplica exacta de los términos de la oral que el jurado recibió a través del testimonio del detective Rivera. Considerados los hechos en conjunto, el error cometido no da lugar a la revocación de la sentencia.

3—El incidente que motiva el apuntamiento del tercer error tuvo lugar en la siguiente forma:

"¿Usted puede relatar si usted habló en algún momento con él?
Sí, señor.
¿Qué, si algo, le dijo usted a él?
DEFENSA:
Objeción. Que no diga lo que le dijo el testigo al acusado.
HON. JUEZ:
Lo que este señor le dijo al acusado se admite.
DEFENSA:
Excepción.
HON. JUEZ:
¿El propósito es discutir alguna clase de reacción por parte del acusado?
FISCAL:
Sí, señor Juez.
HON. JUEZ:
Se admite.

.     .     .     .     .     .     .     .

FISCAL:
¿En ese momento le hizo alguna manifestación el acusado?
Sí, señor ( él me dijo estas palabras, a mí me apodan Picante, me dijo: 'Picante, fíjate qué injusticia van a cometer conmigo, que yo no he cometido este crimen y dicen que yo golpeé a doña Leticia, y no la agolpeé nada. Yo fui a buscarle tres centavos de pan, que ella me manda a buscar pan todos los días a la tienda.'

¿Usted ya había hablado con doña Leticia?

Sí, señor.

¿Esa manifestación surgió así espontáneamente de él?

Sí, porque él me conoce a mi. El me vio en ese momento y me dijo esas palabras.

¿Y usted no le dijo nada a él?

Bueno, yo no le dije nada. El se estaba despaseando y me dijo eso, que él no había sido.

.        .        .        .        .        .        .        .

¿En algún momento le hizo usted mención a Raúl de lo que hablara con doña Leticia?

Yo se lo dije a él.

¿Podría decir lo que usted le dijo a él relacionado con esa conversación?

DEFENSA:

Objeción.

HON. JUEZ:

Se elimina la parte de la pregunta que sea relacionada con lo que él habló con nadie. Ahora, se permite lo que le dijo a él independientemente de los fundamentos.

DEFENSA:

Excepción.

HON. JUEZ:

Anótese.

FISCAL:

¿Qué usted le dijo?

¿Puedo explicarlo según está mi declaración aunque haya detalles?

HON. JUEZ:

Usted va a decirle al jurado lo que usted le dijo al acusado con las palabras que usted lo dijo hasta donde pueda reproducirlas.

Yo le dije a Raúl que doña Leticia me había dicho a mí que él . .

FISCAL:

¿Qué fue lo que usted le dijo a Raúl Couret Martínez en el Cuartel?

Que me habían dicho que le había dado con una piedra en un ojo y habían salido las palabras estas de que le quería echar y que un polvito y ahí hubo un forceo y ella se defendió para que no hubiera nada. Eso fue lo que yo le dije a él: que a mi me habían dicho que ella se había defendido para que él no intentara violarla.

¿ Y qué más ?

Entonces él dijo: 'Yo no; yo lo que hice que llegué y fui a buscar los tres centavos de pan porque yo todos los días voy a eso.' Pero siempre insistió que no había sido él." (T.E. págs. 166–167, 168, 169–170, 176–177.)

■ Se pretende que a la anterior situación se aplique lo resuelto en *Pueblo* v. *Alvarez Trinidad,* 85 D.P.R. 593 (1962), pero un ligero examen demostrará que no le asiste la razón. En *Alvarez Trinidad,* el acusado no reaccionó, permaneció en silencio, ante una imputación que se le hiciera relacionada con la comisión del delito, y este hecho se quiso tomar como una admisión por adopción. En este caso, a diferencia de *Alvarez Trinidad,* el acusado no permaneció callado cuando se le hizo la imputación, y, lejos de ello, en forma positiva la negó y explicó su propia versión sobre sus relaciones con la víctima. No puede haber conculcación del derecho constitucional a que no se comente el silencio del acusado.

*No habiéndose cometido los errores señalados, se confirmará la sentencia dictada por el Tribunal Superior, Sala de Ponce, en 24 de febrero de 1958.*