El Juez Asociado Señor Kolthoff Caraballo
emitió la opinión del Tribunal.
En esta ocasión nos corresponde determinar si el Minis-terio Público puede incluir, en el pliego acusatorio, citas textuales en primera persona de testigos potenciales. Con-testamos en la negativa.
I
El Ministerio Público presentó una denuncia contra la Sra. María B. Vélez Rodríguez (peticionaria) por infracción al Art. 3.3 (maltrato por amenaza) de la Ley Núm. 54 de 15 de agosto de 1989, “Ley para la Prevención e Intervención con la Violencia Doméstica’’(1) Una vez se determinó causa probable para acusar, el Ministerio Público presentó la acusación. Esta dispuso lo siguiente:
*625 La referida acusada, MAR[Í]A B. V[É]LEZ RODRIGUEZ, allá en o para el 3 de MARZO de 2011, en Adjuntas, PUERTO RICO, que forma parte de la jurisdicción del Tribunal de Pri-mera Instancia, Sala de Utuado, ilegal, voluntaria, maliciosa y criminalmente, amenazó con causarle daño determinado, a C[Á]NDIDO BERIO RODR[í]GUEZ, quien es su compañero consensual, consistente los hechos en que le manifestó: “QUE ME IBA A MATAR DONDE ME VIERA Y TE VOY A PERSE-GUIR HASTA DARTE DOS PUÑALADAS. LUEGO ALLÍ MISMO ME DIJO, SÁTIRO, CABRÓN, ME CAGO EN TU MADRE, NO TE VAYAS A QUEDAR DONDE TU DUERMES, PORQUE TE VOY A PUÑALEAR LA ESPALDA”. Sintiendo el perjudicado temor por su vida. (Énfasis suplido)(2)
El día señalado para la lectura de acusación, la repre-sentación legal de la peticionaria solicitó en la vista la des-estimación del caso. Argüyó que en la acusación sometida no prevalecía el Art. 3.3 de la Ley Núm. 54 (8 L.P.R.A. sec. 633). Luego de examinar los planteamientos de las partes, el Tribunal de Primera Instancia acogió —en corte abier-ta— la solicitud de la defensa y ordenó al Ministerio Pú-blico enmendar el pliego acusatorio en un término de cinco días o de lo contrario desestimaría el caso. Inconforme, el Ministerio Público presentó una moción de reconsideración en la que señaló, principalmente, que la acusación cumplía con los requisitos constitucionales y estatutarios. Es decir, que la acusación contenía una exposición narrativa corta de los hechos esenciales constitutivos del delito imputado, cumplía con la notificación suficiente al acusado y le pro-tegía contra la doble exposición.
Posteriormente, el Tribunal de Primera Instancia rati-ficó su decisión original y declaró “no ha lugar” la solicitud de reconsideración. La ilustrada sala de primera instancia concluyó lo siguiente:
Concluimos pues, que el estilo en adoptar expresiones en primera persona de testigos potenciales puede provocar confu-sión al juzgador de los hechos. Colocaría también al Ministerio Público en una situación de vulnerabilidad ante la posibilidad *626 de no probar hechos concretos alegados en la acusación que confundan al juzgador y acarreen un desvar[í]o en la justicia.
A nuestro juicio se hace innecesario información no reque-rida por la acusada y que no cumple con el propósito de la Regla 39 de Procedimiento Criminal de Puerto Rico. Nótese que la acusada no solicitó información adicional y/o pliego de especificaciones al amparo de las Reglas de Procedimiento Criminal.
Por lo que resolvemos que la forma en que está redactada y la utilización de la citación literal de declaraciones de la parte perjudicada, nos expone material irrelevante, innecesario y expuesto de manera perjudicial tanto para la acusada como para el Ministerio Público. Por lo tanto, concedemos un tér-mino de cinco (5) días improrrogables al Ministerio Público para someter la enmienda a la acusación. Apéndice de la Pe-tición de certiorari, pág. 69.
Inconforme con esa decisión, el Ministerio Público acu-dió al Tribunal de Apelaciones mediante una petición de certiorari en la que argüyó que la actuación del foro prima-rio fue ultra vires. Alegó que la información adicional o las citas textuales de la declaración jurada de la alegada víc-tima del delito imputado que obran en el pliego acusatorio, no perjudican a la peticionaria. El Ministerio Público sos-tuvo, además, que la acusación en cuestión cumplió con los requisitos de informar a la peticionaria del delito por el que será procesada, así como que la misma consigna todos los elementos de ese delito.
El Tribunal de Apelaciones expidió el recurso de certio-rari y emitió una sentencia en la que revocó la decisión del Tribunal de Primera Instancia. El foro apelativo interme-dio concluyó que la acusación cumple con las exigencias y los requisitos de nuestro ordenamiento al informar adecua-damente a la peticionaria del delito que se le imputa. De igual forma, el Tribunal de Apelaciones sostuvo que el Mi-nisterio Público detalló con claridad todos los elementos del delito imputado, por consiguiente, la acusación es con-forme a derecho.
Insatisfecha por tal proceder, la Sociedad para Asisten- *627 cia Legal (S.A.L.) presentó oportunamente ante este Tribunal una petición de certiorari y una “Moción al amparo de la Regla 50 del Reglamento del Tribunal Supremo”, en re-presentación de la peticionaria. Argüyó, en síntesis, que la citación expresa en el pliego acusatorio de una parte de la declaración jurada del perjudicado lacera los derechos constitucionales de la acusada, privándola del debido pro-ceso de ley y de un juicio justo. Asimismo, señaló que tal actuación también evade la prohibición de la Regla 140 de Procedimiento Criminal, 32 L.P.R.A. Ap. II, para que no se lleven declaraciones juradas al salón de deliberaciones del jurado. La S.A.L. argumentó, además, que las expresiones incluidas en la acusación son inflamatorias y tienen un efecto perjudicial para la peticionaria.
Así las cosas, expedimos el recurso de certiorari, por lo que la peticionaria, así como el Procurador General, pre-sentaron sus respectivos alegatos. Con el beneficio de am-bas comparecencias procedemos a resolver.
II
A. La acusación
Es altamente conocido que, en nuestro ordenamiento procesal penal, el derecho de un acusado a la debida notificación de los cargos presentados en su contra es de rango constitucional. Ello se desprende de la Enmienda Sexta de la Constitución federal(3) y de la Sec. 11 del Art. II de nuestra Constitución que dispone, en lo pertinente, que “[e]n todos los procesos criminales, el acusado disfrutará del derecho a un juicio rápido y público, a ser notificado de la naturaleza y causa de la acusación recibiendo copia de la misma”. (Enfasis suplido).(4) Ese mandato constitucional, se desprende a su vez, del debido proceso de ley con- *628 sagrado en la Enmienda Quinta de la Constitución federal,(5) así como en la Sec. 7 del Art. II de la nuestra,(6) y que exige que el acusado esté informado adecuadamente de la naturaleza y extensión del delito imputado. El mecanismo que tiene el Ministerio Público para cumplir con esa obli-gación de notificación es el uso de la acusación o denuncia (pliego acusatorio) y que, a su vez, el Ministerio Público está obligado a entregar al acusado una copia.
En cuanto a la acusación —que es el mecanismo aplicable a los delitos graves— la Regla 34(a) de Procedimiento Criminal la define como la “alegación escrita hecha por un fiscal al Tribunal de Primera Instancia en la cual se imputa a una persona la comisión de un delito”.(7) La Regla 35 de Procedimiento Criminal,(8) por su parte, dispone los elementos que toda acusación debe contener. A esos efectos, el inciso (c) de la regla antedicha dispone que la acusación deberá contener:
(c) Una exposición de los hechos esenciales constitutivos del delito, redactada en lenguaje sencillo, claro y conciso, y de tal modo que pueda entenderla cualquier persona de inteligencia común. Las palabras usadas en dicha exposición se interpre-tarán en su acepción usual en el lenguaje corriente, con excep-ción de aquellas palabras y frases definidas por ley o por la jurisprudencia, las cuales se interpretarán en su significado legal. Dicha exposición no tendrá que emplear estrictamente las palabras usadas en la ley, y podrá emplear otras que tu-vieren el mismo significado. En ningún caso será necesario el expresar en la acusación o denuncia presunciones legales ni materias de conocimiento judicial.(9)
Conforme a la doctrina establecida, esos requisitos, de rango constitucional y estatutario, se cumplen con una acusación que incluya una exposición de los hechos esen- *629 cíales constitutivos del delito, redactada en lenguaje senci-llo, claro y conciso para que cualquier persona de inteligen-cia común pueda entenderla.(10) Por consiguiente, para que el Ministerio Público pueda cumplir con lo anterior no se le exige ningún lenguaje estereotipado o técnico en su redac-ción ni el uso estricto de las palabras dispuestas en el es-tatuto, solo se le exige que el contenido exponga todos los hechos constitutivos del delito.(11) De esa forma, “la función de la acusación o denuncia es crucial para el acusado pues, por virtud de ella, el acusado conoce los hechos que se le imputan, de suerte que pueda preparar su defensa con-forme a ellos”.(12)
En situaciones en las que un acusado considere que hace falta más información en la acusación, puede solicitar un “pliego de especificaciones”. El tipo de información adicional que se solicita tiene que relacionarse con hechos o detalles que, aunque no sean hechos esenciales constitutivos del delito, ayudan a clarificar la denuncia o acusación.(13) No obstante, el pliego de especificaciones no es un derecho absoluto sino una facultad puramente discrecional del tribunal.(14) Este procede “cuando la justicia así lo requiera; esto es, cuando la información que se solicita, en la opinión del tribunal, sea necesaria para que el acusado pueda defenderse adecuadamente en el proceso judicial a que el Estado lo somete”.(15)
*630 Por otro lado, cuando la acusación, la denuncia o un escrito de especificaciones adolece de algún defecto de forma o sustancial, la Regla 38 de Procedimiento Criminal, 34 L.P.R.A. Ap. II, dispone con gran liberalidad que el tribunal podrá permitir las enmiendas que sean necesarias para subsanarlo. La Regla 36 de Procedimiento Criminal, íd., establece que el defecto de forma será aquel que no perjudica los derechos sustanciales del acusado. Ante esas circunstancias, el tribunal podrá permitir en cualquier momento las enmiendas necesarias para subsanar dicho defecto de forma.(16) Una vez rendido el veredicto del jurado o el fallo del tribunal, en ausencia de enmienda, el defecto, imperfección u omisión se entenderá subsanado.(17)
En cambio, el defecto sustancial “es el que perjudica los derechos sustanciales del acusado, bien porque le impide preparar adecuadamente su defensa o porque, sencillamente, tiene el efecto de insuficiencia de la acusación o denuncia”.(18) Cuando la acusación o denuncia adolece de un defecto sustancial, el tribunal en el cual se ventilare originalmente el proceso podrá permitir, en cualquier momento antes de la convicción o absolución del acusado, las enmiendas necesarias para subsanarlo.(19) En los casos que traten de una acusación, el acusado tendrá el derecho a que se celebre un nuevo acto de lectura de acusación.(20)
III
En el caso de autos, el delito que se imputa en la acusación es el de maltrato mediante amenaza del Art. 3.3 de la Ley Núm. 54, supra. Ese delito es definido así:
*631 [t]oda persona que amenazare a su cónyuge, ex cónyuge, a la persona con quien cohabita o con quien haya cohabitado o con quien se sostiene o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, con causarle daño determinado a su persona, a los bienes aprecia-dos por ésta, excepto aquellos que pertenecen privativamente al ofensor, o a la persona de otro, incurrirá en delito grave de cuarto grado en su mitad superior.
La acusación, por su parte, dispuso lo siguiente:
La referida acusada, MAR[Í]A B. V[É]LEZ RODR[í]GUEZ, allá en o para el 3 de MARZO de 2011, en Adjuntas, PUERTO RICO, que forma parte de la jurisdicción del Tribunal de Pri-mera Instancia, Sala de Utuado, ilegal, voluntaria, maliciosa y criminalmente, amenazó con causarle daño determinado, a C[Á]NDIDO BERIO RODR[í]GUEZ, quien es su compañero consensual, consistente los hechos en que le manifestó: “QUE ME IBA A MATAR DONDE ME VIERA Y TE VOY A PERSE-GUIR HASTA DARTE DOS PUÑALADAS. LUEGO ALLÍ MISMO ME DIJO, SÁTIRO, CABRÓN, ME CAGO EN TU MADRE, NO TE VAYAS A QUEDAR DONDE TU DUERMES, PORQUE TE VOY A PUÑALEAR LA ESPALDA”. Sintiendo el perjudicado temor por su vida. Apéndice de la Petición de cer-tiorari, pág. 73.
Al examinar la acusación, a la luz de los requisitos es-tablecidos en la doctrina, podemos notar que esta es sufi-ciente y refleja todos los elementos esenciales del delito imputado. En lo particular, la acusación expresa clara-mente una conducta delictiva constitutiva de amenazar a una pareja consensual con causarle daño determinado a su persona. Sin embargo, la peticionaria alega que las expre-siones utilizadas en la acusación son innecesarias e infla-matorias y, por ende, deben ser eliminadas. No le asiste la razón.
El argumento principal de la peticionaria se sustenta en la Regla 7(d) de Procedimiento Criminal federal que dis-pone lo siguiente:
(d) Surplusage. Upon the defendant’s motion, the court may strike surplusage from the indictment or information. 18 U.S.C. Ap. R. 7(d).
*632 En términos generales, en la jurisdicción federal se ha considerado como “surplusage” cualquier hecho o circunstancia que no es un elemento necesario del delito imputado en el pliego acusatorio(21) o aquellas alegaciones que, aun si fueran eliminadas del pliego acusatorio, no afectarían su suficiencia.(22) El propósito de la regla citada es proteger al acusado de alegaciones de hechos inmateriales o irrelevantes.(23) Ejemplo de ello son las situaciones en las que en el pliego acusatorio se hace referencia innecesaria al color de piel u origen del acusado o la víctima con el propósito de estimular el interés del jurado.(24)
Como parte del desarrollo de la doctrina, hay tribunales que han utilizado lo que se conoce como el conjunctive test, el cual sostiene que para que una información se considere surplusage no solo tiene que ser innecesaria (o inmaterial), sino que también tiene que ser perjudicial para el acusado.(25) Es decir, no se entenderá como surplusage aquella información que, aunque sea irrelevante, no perju-dique al acusado y viceversa.(26)
No obstante, la doctrina federal actual es sumamente liberal en cuanto a permitir en el pliego acusatorio información más allá de la mínima necesaria. Incluso, hay tribunales que han permitido mantener en la acusación aquella información que aunque no es esencial a los cargos imputados, sí es relevante o pertinente a la evidencia que el Ministerio Público presentará en el juicio.(27) De igual *633 forma, hay decisiones judiciales que han denegado elimi-nar información relacionada con el origen o color de piel aunque sea perjudicial, ello si esa información es relevante con el delito imputado.(28)
Ahora bien, contrario a lo dispuesto en la Regla 7(d) de Procedimiento Criminal federal, supra, en nuestras Reglas de Procedimiento Criminal no existe una disposición análoga. Por lo tanto, no hay un mandato expreso, como lo es a nivel de la jurisdicción federal, que permita eliminar información superflua (surplusage) del pliego acusatorio. Además, el caso de autos no es el idóneo para considerar la adopción de una postura análoga a la federal. Nos explicamos.
El delito que se imputa en la acusación es el de ame-naza, por lo que consideramos que es correcto que el Mi-nisterio Público brinde detalles en la descripción de la con-ducta imputada. Las palabras soeces y aquellas que constituyen la amenaza no son irrelevantes o inflamato-rias para ese delito. Así, pues, no estamos ante una situa-ción en la cual las palabras pudieran catalogarse de super-fluas o deban ser eliminadas. Es axiomático que una acusación que imputa este tipo de delito pueda contener los detalles germanos a la conducta imputada. Por consi-guiente, el Ministerio Público podía utilizar ese tipo de in-formación en la acusación, la cual, como ya mencionamos, cumple con la norma general sobre suficiencia y es cónsono con la liberalidad de esa normativa. Recordemos que lo im-portante es que se cumpla con las garantías mínimas re-queridas por la doctrina. Es decir, establecer todos los ele-mentos esenciales del delito imputado en lenguaje sencillo, claro y conciso para que cualquier persona de inteligencia común pueda entenderla. (29)
*634 El Ministerio Público tiene discreción para decidir la conveniencia de brindar información adicional a la mínima requerida. Ante eso, el Procurador General expresó en su alegato que “[l]a mayor especificidad en lo alegado lo que hace es limitar al Ministerio Fiscal en relación con la per-tinencia de la prueba de cargo, pues ésta debe ir dirigida a lo alegado en la acusación”(30) Y, por lo tanto, “[s]i la acu-sación solo alegara que la acusada amenazó al perjudicado con causarle daño a su persona o a sus bienes, el Ministe-rio Fiscal podría presentar cualquier evidencia”(31)
De esa forma, como el Ministerio Público no está obligado a abundar en la acusación más allá de lo mínimo requerido(32) tampoco se le prohíbe hacerlo. En consecuencia, contrario a lo resuelto por el Tribunal de Primera Instancia, y como muy bien resolvió el Tribunal de Apelaciones, el contenido de la información en la acusación no es material irrelevante ni innecesario.
IV
El Tribunal de Apelaciones solo limitó su análisis a un examen de suficiencia de la información contenida en el pliego acusatorio, sosteniendo así que la acusación cumplió a cabalidad con la normativa vigente. Por ende, revocó la determinación del foro primario de que se enmendara la acusación. Sin embargo, nuestro análisis en este caso no debe limitarse meramente a la adjudicación sobre suficiencia. Ello, porque la controversia principal del caso de autos no está centrada en la suficiencia de la acusación (contenido), sino en la forma como se brindó la información en esta y los efectos peijudiciales que puede acarrear a todas las partes. Precisamente, la controversia gira en *635 torno al uso de una cita directa de la declaración jurada del peijudicado para describir la conducta delictiva que se im-putó a la señora Vélez Rodríguez en la acusación presen-tada en su contra. Es decir, la pregunta que nos resta por hacer es la siguiente, ¿cuáles son los efectos, si alguno, del uso de citas directas de declaraciones juradas en una acu-sación? Los efectos son varios, veamos.
A.
En primer lugar, la peticionaria nos señala que la trans-cripción parcial de una declaración jurada en la acusación constituye una forma del Ministerio Público para evadir el cumplimiento con la Regla 140 de Procedimiento Criminal, supra. Asimismo, arguye que esa actuación viola su dere-cho a un juicio justo, así como al debido proceso de ley.
La Regla 140 de Procedimiento Criminal, supra, dispone que “[a]l retirarse a deliberar, el jurado deberá llevarse consigo todo objeto o escrito admitido en evidencia, excepto las deposiciones”. Al interpretar el término “deposiciones” este Tribunal lo amplió para incluir tanto la confesión o admisión escrita de un acusado, así como las declaraciones juradas de los testigos.(33) Precisamente, en Pueblo v. Ramos Cruz, 84 D.P.R. 563, 571 (1962), sostuvimos que la prohibición de que el jurado lleve consigo las declaraciones escritas —en este caso la confesión escrita del acusado— se sustenta en “que es injusto para el acusado, que el jurado tenga ante sí un documento escrito que puede leer y releer cuantas veces le plazca ... mientras que de la prueba desfilada en el juicio en su defensa, el jurado sólo tiene el recuerdo de lo que declararon los testigos”. Lo anterior se sustenta en el hecho de que “normalmente tiene más fuerza el documento escrito que se tiene ante la *636 vista, que el recuerdo de un testimonio oral”.(34) Esta norma fue aplicada de igual forma a la declaración jurada de un testigo en el caso de Pueblo v. Martínez Díaz, 90 D.P.R. 467 (1964).
Es evidente que la norma prevaleciente prohíbe que este tipo de documentos sean entregados al Jurado para la deliberación. No obstante, la doctrina ha reconocido que aun cuando esos documentos sean entregados al Jurado, ello no anula automáticamente el veredicto y habrá que determinar si fue un error perjudicial para el acusado.(35)
Ahora bien, entre los documentos que el Jurado se lleva al proceso de deliberación, está el pliego acusatorio. Por consiguiente, al examinar los hechos del caso ante nuestra consideración, resulta claro que la práctica del Ministerio Público de citar expresamente porciones de la declaración jurada del perjudicado contraviene la doctrina expuesta, en la situación de que la peticionaria decida hacer uso de su derecho a juicio por jurado. Asimismo, una práctica como la aquí utilizada por el Ministerio Público tiene el efecto de evadir subrepticiamente la prohibición de que las declaraciones juradas —escritas— sean consideradas por el Jurado en el proceso de deliberación, al introducirlas a través del pliego acusatorio. Ello no solo violaría la Regla 140 de Procedimiento Criminal, supra, sino que además laceraría los derechos de la peticionaria y pudiera ocasio-nar en su día la anulación de un veredicto, en casos en los que se considere como un error perjudicial. Así, pues, le asiste la razón a la peticionaria.
En segundo lugar, avalar la práctica del Ministerio Pú-blico de citar textualmente porciones de una declaración jurada permitiría que, en el juicio, la alegada víctima o un testigo —de quien se haya obtenido la declaración jurada o el testimonio que se cita en la acusación— declare de forma *637 diferente o con menos detalles que lo contenido en el pliego acusatorio. Ante esas circunstancias, el uso de las citas directas en la acusación abre las puertas a la posibilidad de que el jurado utilice esas citas para corroborar o, más aún, complementar o ampliar algún testimonio. Esa práctica, incluso, sería igual o adversamente mayor en los escena-rios en los que un testigo o la alegada víctima ni siquiera se sienten a declarar. En esos casos, la deliberación del Jurado puede mancillarse con información de carácter testimonial que no fue considerada en el juicio, lacerando así los derechos constitucionales del acusado. Ello, en primer lugar, porque “el acusado tiene un derecho constitucional —debido proceso de ley y juicio por jurado imparcial— a que el Jurado delibere con base en la prueba y no con base en información que no fue considerada en el juicio”.(36) En segundo lugar, porque el Jurado estaría considerando citas de un testimonio sustantivo que constituye prueba de refe-rencia y que el acusado pudiera no haber tenido la oportu-nidad de contrainterrogar.
No ignoramos el argumento de que la acusación no cons-tituye prueba. Por lo tanto, puede plantearse que las ins-trucciones al jurado —que son una de las medidas caute-lares para preservar el proceso como justo e imparcial— subsanan los posibles efectos perjudiciales antedichos. Ello, porque el Ministerio Público tendrá que probar más allá de duda razonable las alegaciones específicas que se imputan en la acusación. Sin embargo, consideramos que en este tipo de casos la instrucción al Jurado de que la acusación no constituye prueba, no es suficiente para evi-tar un perjuicio indebido a la peticionaria. En este caso la enmienda a la acusación sería una medida cautelar superior a la instrucción.
Debemos notar que no estamos ante una acusación tí-pica en la que el Ministerio Público relata los detalles de la conducta imputada de delito en tercera persona gramati *638 cal. En ese escenario, más allá de los detalles que puedan brindarse, quien lee la acusación puede comprender razo-nablemente que quien está “hablando” o “describiendo la conducta” en la acusación es un ente externo, o sea, el Mi-nisterio Público. Las acusaciones típicas que se presentan a diario en nuestros tribunales se redactan en tercera persona gramatical y reflejan claramente las alegaciones del Ministerio Público.
Por el contrario, cuando la acusación se redacta con porciones en primera persona gramatical, como la aquí en cuestión, cualquier lector razonable puede notar que el que está “declarando” es un sujeto activo o pasivo del suceso que originó el procedimiento penal. Es decir, un sujeto separado y diferente del Ministerio Público. Claramente, el lector puede percatarse de que lo expresado no son alegaciones del Ministerio Público, sino de alguien más. Ese tipo de redacción por parte del Estado es una práctica innecesaria y altamente sospechosa porque abre las puertas a la confusión y al uso indebido de prueba testimonial por parte del Jurado (juzgador). Hoy son dos oraciones; mañana, tal vez, será media página de expresiones en primera persona gramatical, que fueron parte de una declaración jurada, y que estarían disponibles en medio de un cuarto de deliberación. El que no haya límites en la cantidad de información permitida en una acusación no significa que estemos obligados a avalar la práctica de citar literalmente porciones de declaraciones juradas o declaraciones de carácter testimonial.
B.
Por otro lado, no debemos pasar por alto que la práctica de citar expresamente las declaraciones juradas o testimo-nios de algún testigo o víctima podría perjudicar, a su vez, al Ministerio Público. Por esa razón, la Jueza del Tribunal de Primera Instancia, Hon. Sandra Y. Gil de Lamadrid, *639 reconoció sabiamente en su resolución que “el estilo en adoptar expresiones en primera persona de testigos poten-ciales puede provocar confusión al juzgador de los hechos”. Ello, porque esa práctica crea la posibilidad de que no se prueben los hechos concretos alegados en la acusación, lo que colocaría al Ministerio Público en una situación de vul-nerabilidad, e igualmente puede confundir al juzgador y acarrear un desvarío en la justicia. Esa práctica le impone la carga al Ministerio Público de que su testigo declare lo que inicialmente se citó, para no tener que enmendar la acusación. Incluso, en casos de testimonios altamente disí-miles, la credibilidad del testigo podría lacerarse injusta e incorrectamente.
El Procurador General, por su parte, señaló que el uso de comillas en las expresiones de la peticionaria no implica un vicio en la acusación, ya que estas no aluden expresa-mente a una declaración jurada. Sin embargo, acepta que esas comillas “indican que esas fueron palabras textuales de la acusada”. Es decir, no hay duda de que la cita es parte del testimonio del peijudicado. El Procurador General añade que esa cita es una alegación y no es evidencia, por lo que estará obligado a presentar en el juicio la prueba correspondiente. Está en lo correcto, no obstante, ignora que el asunto problemático no está en el contenido o lo alegado, sino en la forma en cómo se brinda.
Asimismo, al examinar el efecto adverso, si alguno, que sufriría el Ministerio Público con la prohibición del uso de citas directas en la acusación, la respuesta es: práctica-mente ninguno. El Ministerio Público solo tendría que en-mendar la acusación y redactar la acusación en tercera persona gramatical.
C.
Vale señalar que contrario a lo solicitado por la peticio-naria, aquí no estamos ante un asunto que amerite la des- *640 estimación de la acusación. En la etapa de los procedimien-tos en el que se encuentra el caso de autos, el mecanismo de citar literalmente las declaraciones del alegado perjudi-cado en la acusación constituye solo un defecto de forma.(37) Así, el tribunal puede permitir las enmiendas que sean necesarias para subsanarlo y con ello se evitaría cualquier efecto perjudicial y sustancial a los derechos de la peticionaria. En el caso de autos, lo que corresponde es una mera enmienda a la acusación para volver a redactar dos oraciones. Evidentemente, lo anterior no acarrea una carga onerosa ni un problema sustancial para el Ministerio Público.
D.
Por último, es necesario que atendamos el señalamiento de la opinión disidente dirigido a resaltar que la acusación utilizada en Pueblo v. Ayala García, 186 D.P.R. 196 (2012), presentaba el uso de unas declaraciones entre comillas análogas a las de este caso. Con ello intenta crear una aparente inconsistencia de este Tribunal al expresar que “a ningún miembro de este Foro le causó sospecha la redac-ción de esa acusación”(38) No obstante, la opinión disidente pasa por alto que la controversia que hoy resolvemos (el uso de una cita literal de carácter testimonial en la acusa-ción) no fue parte de la controversia en Ayala García.
En Pueblo v. Ayala García, la controversia se centró en resolver “si el delito de maltrato contenido en la Ley para la Prevención e Intervención con la Violencia Doméstica, Ley Núm. 54 de 15 de agosto de 1989 (Ley 54), es un delito menor incluido en el de maltrato mediante amenaza que *641 tipifica esa ley”.(39) Asimismo, examinamos si se justificaba “dejar en libertad a una persona acusada por maltratar a su pareja debido a que se le sentenció por un delito distinto al imputado, aunque se probó que había cometido aquel por el cual se le acusó”. (40) Es decir, es evidente que la con-troversia del caso de autos no estuvo ante la consideración de este Tribunal en Pueblo v. Ayala García, íd.
Otro aspecto que merece nuestra atención es el argu-mento de que nuestra decisión en el caso de autos “revoca” el caso Pueblo v. Calviño Cereijo, 110 D.P.R. 691 (1981).(41) Nada puede estar más lejos de la verdad. En Calviño Ce-reijo, íd., se cuestionó el contenido de dos acusaciones por tentativa de asesinato (se alegaba que no imputaban deli-to), porque estas no señalaban expresamente que el asesi-nato no se consumó por razones ajenas a la voluntad de los acusados. Los acusados pretendían que ambas acusaciones utilizaran literalmente la expresión del Art. 26 del Código Penal de 1974, de que “[e]xiste tentativa cuando la persona realiza acciones o incurre en omisiones inequívocamente dirigidas a la ejecución de un delito, el cual no se consuma por circunstancias ajenas a su voluntad”. (Enfasis nuestro). 33 L.P.R.A. ant. sec. 3121.
En esa ocasión, resolvimos que el Ministerio Público no tenía que “emplear estrictamente las palabras usadas en la ley”, por lo que podía “emplear otras que tengan el mismo significado”.(42) A esos efectos es que reconocimos que el Ministerio Público no tiene por qué seguir un len-guaje estereotipado, técnico o talismánico.(43) Por consi-guiente, salta a la vista que, contrario a lo expresado por la disidencia, lo resuelto en el caso de autos no trastoca la norma establecida en Calviño Cereijo.
*642 V
En el caso de autos realizamos un balance de intereses entre: el pobre valor procesal del mecanismo del Ministerio Público de utilizar citas directas de testimonios en la acu-sación y el impacto casi inexistente en sus funciones, vis-á-vis el riesgo de causar un perjuicio indebido a la peticio-naria, confusión o desorientación del Jurado, así como el riesgo de presentación innecesaria de prueba. Al así ha-cerlo, es forzoso concluir que la balanza se inclina a favor de la protección de los derechos de la peticionaria a un debido proceso de ley yaun juicio justo. Lo correcto es que el Ministerio Público enmiende la acusación y reformule el lenguaje, de manera tal que no haga referencia a citas li-terales de carácter testimonial del alegado perjudicado.
Así, en armonía con lo resuelto, revocamos la sentencia del Tribunal de Apelaciones y reinstalamos la orden del Tribunal de Primera Instancia que le concede al Ministerio Público un término de cinco días improrrogables para so-meter la enmienda a la acusación, y así elimine la citación literal de las declaraciones de la parte perjudicada.

Se dictará sentencia de conformidad.

El Juez Asociado Señor Martínez Torres emitió una opi-nión disidente, a la cual se unió la Jueza Asociada Señora Pabón Charneco.

 8 L.P.R.A. sec. 633.

 Apéndice de la petición de certiorari, pág. 73.

 Const. EE. UU., L.P.R.A., Tomo 1.

 Const. E.L.A., L.P.R.A., Tomo 1, ed. 2008, pág. 343. Véase Pueblo v. Montero Luciano, 169 D.P.R. 360, 372 (2006).

 Const. EE. UU., L.P.R.A., Tomo 1.

 Const. E.L.A., L.P.R.A., Tomo 1.

 34 L.P.R.A. Ap. II

 Íd.

 Íd.

 Pueblo v. Montero Luciano, supra, pág. 373; Pueblo v. Flores Betancourt, 124 D.P.R. 867 (1989).

 Pueblo v. Montero Luciano, supra; Pueblo v. Calviño Cereijo, 110 D.P.R. 691, 693-694 (1981).

 Pueblo v. Montero Luciano, supra, pág. 373.

 Pueblo v. Canino Ortiz, Luciano, supra, pág. 373; Pueblo v. Flores Betancourt, 124 D.P.R. 867 (1989).
(13) Pueblo v. Montero Luciano, supra; Pueblo v. Calviño Cereijo, 110 D.P.R. 691, 693-694 (1981).
(13) Pueblo v. Montero Luciano, 134 D.P.R. 796, 812 (1993).

 íd.

 íd., pág. 813.

 34 L.P.R.A. Ap. II, R. 38(a).

 Íd.

 E.L. Chiesa, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1995, Vol. III, pág. 120.

 34 L.P.R.A. Ap. II, R. 38(b).

 Íd.

 United States v. Garrison, 168 F. Supp. 622, 624 (E.D. Wis. 1958); State v. Finnegan, 55 N.W.2d 223, 244 Iowa 166 (1952).

 Mathews v. United States, 15 F.2d 139 (8vo Cir. 1926).

8) 1 Wright and Leipold, Federal Practice and Procedure 4th Sec. 128, pág. 641 (2008).

 íd.

 íd., págs. 643-646.

 United States v. Hedgepeth, 434 F.3d 609 (3er Cir. 2006), cert. denegado 547 U.S. 1144 (2006).

 United States v. Yeaman, 987 F.Supp. 373 (E.D. Pa. 1997); United States v. Caruso, 948 F. Supp. 382, 392 (D. N.J. 1996).

 Wright and Leipold, supra, pág. 641.

 Pueblo v. Montero Luciano, supra, pág. 373; Pueblo v. Flores Betancourt, supra.

 Alegato del Procurador General, pág. 10.

 Íd.

 Ello es distinto, claro está, cuando aplica lo relacionado con los pliegos de especificaciones.

 Véanse: Pueblo v. Ramos Cruz, 84 D.P.R. 563 (1962); Pueblo v. Couret Martínez, 89 D.P.R. 57 (1963); Pueblo v. Martínez Díaz, 90 D.P.R. 467 (1964); Pueblo v. García García, 98 D.P.R. 827 (1970) (Transcripciones).

 Pueblo v. Ramos Cruz, supra, pág. 571.

 Id.; Pueblo v. Couret Martínez, supra; Pueblo v. Martínez Díaz, supra; Pueblo v. García García, supra.

 Chiesa, op. cit, Vol. II, pág. 343.

 Es importante señalar que incluso en la jurisdicción federal en los casos en los que se ha determinado que existe surplusage en la acusación, lo que corresponde es una enmienda a la acusación y no su desestimación. Es una doctrina firmemente establecida que ese tipo de error no conlleva la desestimación de la acusación. Véase Wright and Leipold, supra, pág. 641.

 Opinión disidente, pág. 653.

 Pueblo v. Ayala García, 186 D.P.R. 196, 200 (2012).

 Íd.

 Opinión disidente, pág. 652.

 Pueblo v. Calviño Cereijo, 110 D.P.R. 691, 693-694 (1981).

 Íd., pág. 694.